PUBLIC SERVICE COMMISSION OF NEVADA, AND SOUTHWESTERN IMPROVEMENT & INVESTMENT COMPANY, DOING BUSINESS AS NEVADA CABLEVISION COMPANY, APPELLANTS, v. COMMUNITY CABLE TV, RESPONDENT.

No. 7415

January 29, 1975                    530 P.2d 1392

[Rehearing denied March 24, 1975]

*Robert List,* Attorney General, and *Glade L. Hall,* Deputy Attorney General, Carson City; *Jones & Holt,* of Las Vegas; *Covington & Burling* and *Michael S. Horne, James W. Dyke, Jr.,* and *Craig D. Miller,* 888 Sixteenth Street, N.W., Washington, D.C. 20006, for Appellant Nevada Cablevision Company.

*Beckley, Singleton, DeLanoy & Jemison, Chartered,* of Las Vegas, *Ross, Crow & Grayson,* of Carson City, and *Welch & Morgan,* 3000 Farragut Building, Washington, D.C. 20006, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Community Cable TV and Nevada Cablevision Company were the successful applicants before the Nevada Public Service Commission to construct and operate a community antenna television system (CATV) in the greater Las Vegas, Nevada, area.[1]

On May 5, 1969, the Public Service Commission issued an opinion and order which concluded that the public convenience and necessity would be best served by granting the application

---

[1]NRS 704.020
1.  As used in this chapter, "public utility" shall mean and embrace:
. . .
(f) Community antenna television companies.
NRS 711.030
1.  "CATV company" means any person or organization which

of Community Cable and Nevada Cablevision and "no reasonable basis exists for awarding preference to either Nevada Cablevision or Community Cable TV as the applicant best suited to provide CATV service in Clark County; . . . Nevada Cablevision and Community Cable TV are both equally qualified to provide such service. . . ."

The effect of the May 5, 1969, order was to authorize both companies to provide CATV service within Clark County, their respective service areas to each including approximately 50% of the population of Clark County but the order further provided that the respective applications were granted "subject to the terms and conditions set forth hereinafter." The terms and conditions were that preliminary conferences were to be held for the purpose of establishing and defining appropriate service areas after which each applicant was to be issued a compliance order specifying the conditions to be met (including the obtaining of all necessary licensing from the Federal Communications Commission) prior to the issuance of a certificate of public

---

owns, controls, operates or manages a community antenna television system. . . .

NRS 704.330

1. Every public utility owning, controlling, operating or maintaining or having any contemplation of owning, controlling or operating any public utility shall, before beginning such operation or continuing operations or construction of any line, plant or system or any extension of a line, plant or system within this state, obtain from the commission a certificate that the present or future public convenience or necessity requires or will require such continued operation or commencement of operations or construction.

The principal Nevada statutes which provide guidelines for the making of a determination in such matters are as follows:

NRS 704.350

Every applicant for a certificate of public convenience shall furnish such evidence of its corporate character and of its franchise or permits as may be required by the commission.

NRS 711.080

1. Upon investigation, the legislature of the State of Nevada has determined that the rates, services and operations of community antenna television companies are affected with a public interest.

2. It is the intent of the legislature in the enactment of this chapter to:

(a) Provide fair regulation of CATV companies in the interest of the public, to promote adequate, economical and efficient CATV system service to citizens and residents of this state;

(b) Provide just and reasonable rates and charges for CATV system services without unjust discrimination, undue preferences or advantages, or unfair destructive competitive practices;

(c) Encourage and promote harmony between CATV companies and their subscribers;

(d) Cooperate with other states and with the Federal Government in

convenience and necessity. See TV Pix, Inc. v. Taylor, 304 F.Supp. 459 (1968).

On May 8, 1970, the PSC entered an order establishing the final boundaries of the respective service areas in Community and Nevada Cablevision. On May 29, 1969, Community petitioned the PSC for a clarification of its May 5 order asking the PSC to make it clear that in the event one of the two successful applicants should be unable to perform the remaining applicant's service area would be enlarged to include the entire greater Las Vegas area.

On June 10, 1969, the PSC notified all parties that the substance of the requested clarification was implicit in the May 5, 1969, order granting the application.

After the foregoing took place the event that gives rise to this litigation occurred. Effective August 10, 1970, the FCC added Section 74.1131 to its rules and regulations (now 76.501 as amended). That section provides:

"(a) Cross-ownership. No CATV system (including all parties under common control) shall carry the signal of any TV

---

promoting and coordinating efforts to regulate effectively CATV companies in the public interest; and

(e) Vest authority in the commission to regulate CATV companies generally and their rates, services and operations, in the manner and in accordance with the policies set forth in this chapter.

NRS 711.090

In determining whether a certificate of public convenience should be issued to a CATV company the commission shall take into consideration, among other things, the public need for the proposed service or acquisition, the suitability of the applicant, the financial responsibility of the applicant and the ability of the applicant to perform efficiently the service for which authority is requested.

NRS 711.150

1. Every CATV company and every person and organization providing any service, equipment or facilities thereto shall provide safe and adequate service, equipment and facilities for the operation of its CATV system.

2. No CATV company may demand or receive a greater, less or different compensation for providing CATV service than the rates and charges specified in the tariff in effect at the time.

3. All rates, charges and classifications for the service rendered by a CATV company shall be just and reasonable.

4. No CATV company may make any unjust or unreasonable discrimination in rates, charges, classifications, practices, regulations, facilities or services for or in connection with like service, directly or indirectly, by any means or device, or make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

5. Every CATV company and other person and organization shall obey and comply with the rules, regulations and orders adopted by the commission under the provisions of this chapter.

broadcast station if such system directly or indirectly owns, operates, controls or has an interest in: . . .

"(2) A television broadcast station whose predicted Grade B contour, computed in accordance with Section 73.684 of this chapter, overlooks in whole or in part the service area of such system (i.e., the area in which the system is serving subscribers).

". . . Note 1: The word 'control' as used herein is not limited to majority stock ownership but includes actual working control in whatever manner exercised.

"Note 2: The word 'interest' as used herein includes, in the case of corporations common officers or directors and partial (as well as total) ownership interests represented by ownership of voting stock.

"(d) Effective date: Provisions of Paragraph (a) of this section are not effective until August 10, 1973, as to ownership interests proscribed herein if such interests were in existence on or before July 1, 1970 (e.g., if a franchise were in existence on or before July 1, 1970); provided, however, that the provisions of Paragraph (a) of this section are effective on August 10, 1970, as to such interests acquired after July 1, 1970."

The deadline for divestiture of cross-ownership interests existing prior to July 1, 1970, was extended by the Commission to August 10, 1975.

This rule prohibits cross-ownership interests between cable TV systems and co-located TV broadcast stations but allows cable system operators who acquired their state or local government grant of operation authority on or before July 1, 1970, a grace period for divestiture of one or the other ownership interests until August 10, 1975. Eighty percent of Nevada Cablevision is owned by Donald Reynolds who also owns TV broadcast station KORK–TV in Las Vegas, thus the provisions with respect to cross-ownership interests of Mr. Reynolds in station KORK–TV and Nevada Cablevision apply.

This dispute concerns the significance or effect of Reynolds' interest of the grant of CATV by the PSC.

On August 12, 1970, the PSC issued its compliance order setting forth the requirements to be met by Community and Nevada Cablevision before issuance of their respective certificates of public convenience and necessity. This order established a time limit for compliance and stated that:

"This compliance order does not constitute operating authority; . . . provisions of the CATV service contemplated by this compliance order may not be instituted prior to the issuance of the certificate of public convenience and necessity. . . ."

On October 13, 1970, following submission of requested documentation by both applicants, the PSC issued certificates of public convenience and necessity to Community Cable and Nevada Cablevision. The order accompanying the issuance of the certificates informed the applicants, however, that construction of their respective CATV systems could not commence until all necessary licensing had been obtained from the FCC. The deadline for obtaining this license, October 13, 1973, has been extended by the PSC for both certificates to October 13, 1975.

On November 12, 1970, Community by petition directed the attention of the PSC to the enactment of Section 74.1131 (now Section 76.501 as amended) of the FCC rules which had not been in existence at the time of the PSC's May 5, 1969, order granting the application of Community and Nevada Cablevision. The PSC denied the petition on November 27, 1970, for the asserted reason that the PSC did not have jurisdiction to interpret Section 74.1131 (now Section 76.501) of the rules and regulations of the FCC.

Thereupon Community sought review of the October 13, 1970, order before the district court and moved the matter be remanded to the PSC for additional hearings pursuant to the provisions of NRS 704.560[2] upon the ground that the evidence that has been introduced by Community was different from the evidence previously being considered by the PSC, specifically Section 74.1131 of the FCC rules. The district court granted the petition and remanded the matter to the PSC for the stated purpose and its effect on Nevada Cablevision's "ability . . . to perform efficiently with service for which authority is requested."

On May 9, 1972, the PSC reported to the court that after consideration the PSC had determined that it would not alter, modify, amend or rescind Nevada Cablevision's certificate of public convenience and necessity and stated that it believed that the requirement in Nevada Cablevision's certificate of public convenience and necessity that copies of all required FCC

---

[2]The first paragraph of NRS 704.560 dealing with judicial review of PSC orders provides that:

"If upon the trial of such action evidence shall be introduced by the plaintiff which is found by the court to be different from that offered upon the hearing before the commission, or additional thereto, the court before proceeding to render judgment, unless the parties to such action stipulate in writing to the contrary, shall transmit a copy of such evidence to the commission, and shall stay further proceedings in the action for 30 days from the date of such transmission."

licensing be filed with the Commission prior to October 13, 1973, and if not, the certificate would automatically become null and void, is effective to determine Nevada Cablevision's ability to perform.

Following Community's further proceedings for review of the PSC's October 13, 1970, order and after a hearing on May 24, 1973, the district court ordered that (1) the cross-ownership interests of Mr. Reynolds and TV broadcast station KORK–TV and his interest in the CATV certificate of Nevada Cablevision were not in existence on or before July 1, 1970, i.e., a certificate for the CATV system was not in existence on or before July 1, 1970; (2) thus, the effect of Section 76.501 of the FCC's rules would be to prohibit Nevada Cablevision from carrying the signal of any television broadcast station and thereby greatly limited the ability of Nevada Cablevision to efficiently provide a community antenna television service to the residents of its service area; (3) a certificate from the PSC can only be issued to a party with the present ability to perform, and only upon an unconditional and binding obligation to perform. The PSC by its action in granting a certificate of public convenience and necessity to Nevada Cablevision and by its May 9, 1972, Report of Action to the court following the remand had granted to Nevada Cablevision all of the rights and privileges of a certificated party without requiring the acceptance of corresponding duties and responsibilities. Nevada Cablevision had been granted the alternative of performing or not performing at its option since its ability to perform was dependent upon whether Mr. Reynolds would at some future date elect to divest himself of one or the other of the cross-ownership interests or otherwise escape the restriction imposed by Section 76.501 of the FCC's rules; (4) this being so, the district court reasoned, the PSC had erred in granting Nevada Cablevision a certificate of public convenience and necessity on October 13, 1970, and its action on doing so was arbitrary and capricious for the reason that after the enactment of present Section 76.501 of the FCC's rules Nevada Cablevision was either totally disqualified from ever obtaining the required FCC licensing and thus prospectively unable to perform at all or had at best a limited or qualified ability to perform which was dependent upon either future unilateral action on the part of Mr. Reynolds or waiver of its rules by the FCC and hence was not equal in qualification to Community which had the capacity to perform without limitation or qualifications; (5) therefore, the district court concluded that the PSC had erred in not granting Community a certificate of public convenience and necessity for the entire greater Las Vegas service area.

Findings of fact and conclusions of law to this effect were signed on July 27, 1973, and a judgment of even date entered which provided that it was thereby:

"ORDERED, ADJUDGED AND DECREED that the certificate of public convenience and necessity granted to Nevada Cablevision on October 13, 1970, is declared to be null and void; and the Public Service Commission is directed to issue to Community Cable TV a certificate of public convenience and necessity encompassing the entire greater Las Vegas area."

Nevada Cablevision contends that the district court erred in at least five respects. The PSC joined Nevada Cablevision in this appeal and urges a single additional instance of alleged error. The issues presented on appeal are:

I.    Whether the district court erred when it failed to dismiss the complaint for lack of jurisdiction on the ground that it was untimely.

II.    Whether the district court erred in attempting to interpret and apply a rule of the FCC when the same issue on the same facts was pending before the FCC in another proceeding.

III.    Whether the district court erred by exceeding the proper scope of judicial review when it overruled the PSC's decision to leave the application and enforcement of FCC rules and policies to the FCC.

IV.    Whether the district court erred in determining that Nevada Cablevision had no CATV "interest" within the meaning of the FCC's rule prior to July 1, 1970.

V.    Whether the district court erred in concluding that Nevada Cablevision had only a limited and qualified ability to perform pursuant to the PSC certificate as of October 22, 1970.

VI.    Whether the district court exceeded its jurisdiction in declaring the certificate of public convenience and necessity granted to Nevada Cablevision on October 26, 1970, to be null and void, and in directing the PSC to issue Community a certificate of public convenience and necessity encompassing the entire Las Vegas area.

1.    Nevada Cablevision argues that the time for seeking judicial review ran from the date of the PSC's order of May 5, 1969, conditionally granting the applications of Community and Nevada Cablevision and not from the date of its October 31, 1970, order granting the certificates. The order of May 5, 1969, they argue, was the dispositive action of the PSC of which judicial review should have been sought since any orders of the PSC issued subsequent to that date "were devoted to ancillary details and not to the basic determination of which applicant should be awarded certificates of authority." This

being so, Nevada Cablevision contends that Community's petition for judicial review was untimely filed under NRS 704.540 and the district court consequently was without jurisdiction to decide the case.[3]

The resolution of the question presented turns on what the phrase "an order of the commission" means as used in NRS 704.540. The tenor of that section is that it applies to final rather than interlocutory actions of the PSC since it speaks in terms of orders that fix rates, fares, charges, classifications, practices or services. The question thus becomes which of the orders of the PSC, i.e., May 5, 1969, or October 13, 1970, was final for purposes of judicial review pursuant to NRS 704.540. This is in accord with the general view that the qualities of administrative finality in an order or determination are essential to the invocation of the judicial review even though the applicable statute does not contain the word "final." Chicago and Southern Airlines v. Waterman S. S. Corp., 333 U.S. 103 (1948); Levers v. Anderson, 326 U.S. 219 (1945); Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375 (1938); Houk v. Beckley, 72 N.W.2d 664 (1955); Chastain v. Spartan Mills, 88 S.E.2d 836 (1955).

From an examination of the wording of the May 5, 1969, opinion and order it was not intended to be final but rather was interlocutory in nature and hence not properly subject to judicial review.

The May 5, 1969, opinion of the PSC stated as follows:

"In keeping with the Commission's announcement at the earlier prehearing conference conducted prior to the formal hearings already held a determination of appropriate service area in Clark County for Nevada Cablevision and Community Cable TV *should not result in the immediate issuance of a certificate to each of said applicants.* At this juncture appropriate service areas for each applicant had not even been

---

[3]NRS 704.540 provides for judicial review of actions of the PSC in the following terms:

"Any party in interest being dissatisfied with an order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within 90 days commence an action in the district court of the proper county against the commission and other interested parties as defendants to vacate and set aside any such order on the ground that the rate fixed in such order is unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable."

established. Instead, pursuant to the service areas established a compliance order should be issued to each of them. These compliance orders should specify *the condition to be met* (including the obtaining of all necessary licensing from the Federal Communications Commission) *prior to the issuance of certificates."* (Emphasis added.) The order which accompanied the opinion contained like language.

It is apparent that the opinion and order of May 5, 1969, fixed none of the things specifically enumerated in NRS 704.-540 as being prerequisite to bringing that statute into operation, that is, making it an available vehicle for seeking judicial review at that time. That order left open for future resolution the determinations which would have had to have been resolved on May 5, 1969, in order to have brought NRS 704.-540 into play. It fixed or established no rates, charges, fares, classifications, regulations, practices or services. The net effect of the May 5, 1969, order was that it found Nevada Cablevision to be eligible for a certificate of public convenience and necessity if and when it satisfactorily met certain prescribed conditions subsequent. The failure of Nevada Cablevision to satisfy those conditions subsequent would preclude its being issued a certificate of public convenience and necessity.

An appeal will not lie from an interlocutory order unless such order deprives a party of a substantial right or affects the merits. See Rochester Telephone Corp. v. United States, 307 U.S. 125 (1939); Houk v. Beckley, supra; Wisconsin Telephone Co. v. Wisconsin Employment Relations Board, 34 N.W.2d 844 (1948); Madden v. Brotherhood & Union of Transit Employees, 147 F.2d 439 (4th Cir. 1945); Chastain v. Spartan Mills, supra.

The order fixing the boundaries of the respective service areas of Community and Nevada Cablevision was not entered until May 8, 1970. Even then Nevada Cablevision's authority to operate from the PSC was neither final nor complete for on August 8, 1970, the PSC issued a compliance order specifying further conditions to be met by both Community and Nevada Cablevision before either could receive the required certificate of public convenience and necessity. Failure to comply with any or all of the conditions specified in the compliance order on the part of either Community or Nevada Cablevision would result in their not being certificated to supply a CATV service to their respective service areas. In relevant part the compliance order provided that:

"Failure to comply with the foregoing requirements within the aforesaid time period shall cause this proceeding to be dismissed for lack of prosecution, such dismissal to be entered on the Commission's own motion immediately after expiration of the aforesaid time period . . ." and further, that:

". . . This compliance order does not constitute operating authority; . . . provision of the CATV service contemplated by this compliance order may not be instituted prior to issuance of the certificate of public convenience and necessity referred to hereinabove. . . ."

The effective instrument was a certificate of public convenience and necessity required before any CATV operation or even construction could commence. It is not enough to label further actions to be taken by the PSC as "ancillary details." Until such time as the certificates of public convenience and necessity were issued there was no final order of the PSC which could be properly reviewed under NRS 704.540.

It was not until October 13, 1970, the date of issuance of the respective certificates of public convenience and necessity, that the respective rights and obligations of the party were fixed concerning the providing of CATV service. The certificate of public convenience and necessity is the document symbolizing the grant of authority to own and operate a CATV system. Such prior orders as were issued prior thereto were intermediate and conditional in effect. The certificate is the ultimate instrument insofar as Nevada Cablevision's right to own and operate a CATV system is concerned. A challenge to Nevada TV authority to own and operate a CATV system thus is properly directed to the order conferring that authority.

Nevada Cablevision relies heavily on Paradise Valley Water Co. v. Arizona Corp. Com'n, 377 P.2d 768 (Ariz. 1963), which was decided on the basis of an Arizona statute which has no counterpart in Nevada. Arizona, unlike Nevada, has a statutory provision for the issuance of a qualified operating authority.[4] The decision of the Arizona court followed from the

---

[4]Sec. 40–282, subd. D, Arizona Revised Statutes:

"If a public service corporation desires to exercise a right or privilege under a franchise or permit which it contemplates securing, but which has not yet been granted to it, the corporation may apply to the commission for an order preliminary to the issue of the certificate. The commission may thereupon make an order declaring that it will thereafter, upon application, under rules and regulations it prescribes, issue the desired certificate, upon terms and conditions it designates, after the corporation has obtained the contemplated franchise or permit. Upon presentation to the commission of evidence that the franchise or permit has been secured by the corporation, the commission shall thereupon issue the certificate."

two-step procedure authorized by the Arizona statute whereby the Public Service Commission can issue qualified operating authority and at a later date issue a certificate of public convenience and necessity. It follows, therefore, that an appeal must be timely filed and prosecuted from the date of issuance of such qualified operating authority. It was apparently for this reason that the Arizona court held that an appeal from the issuance of a certificate of public convenience and necessity invoked limited powers upon judicial review.

There is no provision for issuance of qualified operating authority in the State of Nevada. Furthermore, as late as August 12, 1970, the PSC reaffirmed its position that no qualified operating authority had been given with respect to CATV service.

The Nevada cases relied on by Nevada Cablevision are not controlling since both Mirin v. Checker Inc., 85 Nev. 569, 459 P.2d 774 (1969), and Mirin v. Ace Cab Co., 85 Nev. 690, 462 P.2d 523 (1969), arose in factual situations different from those in the instant case. The Mirin cases involved PSC's orders enlarging the existing service areas of taxicab companies already operating pursuant to outstanding certificates of public convenience and necessity. The orders enlarging the service areas were effective October 26, 1967. However, the date upon which the taxicab company could begin the operation within the enlarged areas was postponed to December 26, 1967. It was held that the time within which a complaint challenging the orders could be brought pursuant to NRS 704.540(1) commenced to run on October 26, 1967, rather than on December 26, 1967, inasmuch as the orders were effective on the earlier date and only operation pursuant thereto had been postponed. No further steps were required in those cases to be taken after October 26, 1967, to perfect or make final the orders in question. The contrary is true in this proceeding. The granting of the certificate of public convenience and necessity on October 13, 1970, is the reviewable order. Nev.-Cal. T. Co. v. Commission, 60 Nev. 310, 103 P.2d 43 (1940). It was that order, the denial of which would have sounded the death knell to either of the two remaining applicants (Graci v. United States, 472 F.2d 124 (5th Cir. 1973)) which was the springboard for these proceedings.

2. The second appellate point urged by Nevada Cablevision is that the district court should have deferred any decision on the cross-ownership regulation until the question was decided by the FCC, that the FCC had exclusive jurisdiction to apply the cross-ownership rule. Community counters that cross-ownership was a matter for PSC consideration because it affected Nevada

Cablevision's qualifications and prospective ability to provide the proposed service.

The regulatory scheme for CATV systems is one of dual jurisdiction between state and federal authorities. 38 FCC2d 143 (1972); 46 FCC2d 175 (1974). While the FCC has adopted certain minimal federal standards relating to the qualifications of cable applicants and the terms of franchise these standards are to be applied in the first instance by the local authorities in the franchise selection process. 46 FCC2d 175 (April 1974); A Critical Look at Illinois CATV Franchises, 26 FCC Bar Journal 243 (1973). It follows that the local authorities, the PSC, are to be aware of and to apply the FCC's cable standards and rules and to select a franchise holder whose qualifications are consistent with the federal standards. This was the view of the district court, that a rule of the FCC should be taken into consideration by the PSC in its certificating process which does not conflict with the FCC's jurisdiction over the regulation of CATV. The FCC has exercised its jurisdiction in establishing a regulatory scheme which the FCC itself characterizes as "dual jurisdiction" providing for "federal regulation of some aspects with local regulation of others under federal prescription of standards for local jurisdictions."

Where the FCC in its cross-ownership rule has adopted what is tantamount to a disability it was inappropriate for the PSC to ignore that standard in granting a certificate to Nevada Cablevision. To be remembered is the significance of the district court's finding that Nevada Cablevision did not acquire a franchise on or before July 1, 1970, and therefore it was questionable whether Nevada Cablevision would be able to conduct CATV under the cross-ownership rule. That was a primary factor to be considered by PSC in the issuance of a certificate of public convenience and necessity.

After the district court determined that Nevada Cablevision's franchise was not in existence on or before July 1, 1970, because the certificates of public convenience and necessity herein were not issued until October 13, 1970, it then concluded the cross-ownership would significantly and adversely affect Nevada Cablevision's ability to perform the proposed service. In truth, depending upon the direction to which Cablevision's option would be taken, to keep KORK–TV or to dispose of it, the posture was whether Cablevision could or would

perform at all. Community at the same time had no such disability and in contrast to Cablevision was ready, willing and able to perform.

Therefore, the district court's finding that Nevada Cablevision's comparative qualifications were not equivalent to those of Community since Community had the ability to perform without limitation were correct. As a result, the issuance of a certificate of public convenience and necessity to Nevada Cablevision was error as the district court so found.

3.   Nevada Cablevision's third specification of error is that the district court improperly substituted its judgment for that of the PSC. Community argues that the PSC's refusal to consider the effect of the FCC's cross-ownership rule was arbitrary and capricious and a violation of the PSC's statutory mandate to select an applicant able to "perform efficiently the service for which authority is requested." NRS 711.090.

The general rule is that the proper function of a court in reviewing a determination made by an administrative agency in granting a certificate of public convenience and necessity is to determine whether the agency acted within the scope of its authority assuming that the order complained of was reasonable, not made arbitrarily and in accordance with law. Application of Radio-Fone, Inc., 193 N.W.2d 442 (Neb. 1972).

The scope of review was not exceeded by the district court in this case. The duty of the PSC was to determine which of the applicants was best qualified to provide the proposed CATV service. In so doing it was required to consider all factors which bore upon the public interest. Federal Power Commission v. Transcontinental Gas Pipeline Corp., 365 U.S. 1 (1961); American Trucking Association v. United States, 326 U.S. 77 (1945); Alabama Power Co. v. City of Fort Payne, 187 So. 632 (1939). A major consideration in this determination is the ability of the applicants to perform efficiently the service for which authority is requested which is the requirement of NRS 711.090.

It seems apparent therefore that the cross-ownership rule of Section 76.501 of the FCC's rules is applicable to Nevada

Cablevision. The district court concluded that the cross-owner-
ship rule rendered Nevada Cablevision's ability to perform
limited and qualified and precluded its ability to perform effi-
ciently the service for which such authority was requested as
required by the statute. We agree therefore that the fact that
one cable television system applicant may not operate beyond
August 10, 1975, was a matter which bore upon the public
interest in the prospective ability of that applicant to efficiently
provide the service for which authorization was requested.[5]

Certainly the operation of the cross-ownership rule has an
adverse impact upon the ability to perform. The fact that
Nevada Cablevision needs a waiver of the federal policy and
in view of the status as reflected in Footnote No. 5 Nevada
Cablevision does not qualify as having an equal ability with
Community to perform. The PSC's refusal to consider the sig-
nificance of this effect was arbitrary, capricious and in viola-
tion of the statute.

The declaration of Nevada's legislative purpose of the com-
munity antenna television system law, NRS 711.080 et seq.,
provides:

"2. It is the intent of the legislature in the enactment of
this chapter to:

"(d) Cooperate with other states and with the federal gov-
ernment in promoting and coordinating efforts to regulate effec-
tively CATV companies in the public interest; and

"(e) Vest authority in the commission to regulate CATV
companies generally and their rates, services and operations in
the manner and in accordance with the policies set forth in this
chapter."

By the enactment of Section 76.501 the FCC has deter-
mined that cross-ownership of television broadcast stations and
co-located cable television systems is not in the public interest
and should be prohibited. The PSC was not "cooperating"
within the statutory requirement with the FCC when it granted
a certificate of public convenience and necessity to Nevada
Cablevision who was at that time in violation of the FCC's

---

[5]Nevada Cablevision has petitioned the FCC for a waiver of the
cross-ownership rule. Since the oral argument before this court the fran-
chise of KORK–TV has been revoked and the ruling by the hearing
officer is on appeal. Counsel, by correspondence to this court, appear to
agree that a resolution of that appeal will not be known until sometime
in the latter part of 1976. It is significant that the Reynolds interests are
prosecuting the appeal vigorously which evidences the intention to per-
petuate, not terminate, the cross-ownership.

cross-ownership rule. The PSC was required to consider the effect of Section 76.501 of the FCC's rules upon Nevada Cablevision's capability to perform. Failure to do so was arbitrary and capricious and we uphold the district court's ruling that the PSC's issuance of a certificate of public convenience and necessity to Nevada Cablevision was erroneous.

4. Nevada Cablevision's fourth issue of alleged error is that the district court erred in making the determination that Nevada Cablevision had no CATV "interest" within the meaning of Section 76.501 of the FCC's rules on or before July 1, 1970. The appellant claims it had a sufficient interest by reason of the PSC's opinion and order of May 5, 1969, granting its application for a certificate of public convenience and necessity.

The action of the FCC in adopting the cross-ownership rule and promulgating a policy of dual jurisdiction in CATV matters occurred after the May 5, 1969, order and prior to the issuance of the certificate of public convenience and necessity to Nevada Cablevision. This intervening occurrence adversely affected the qualifications of Nevada Cablevision and created a condition to the issuance of a valid certificate by the PSC, a condition which has not been met so far as the record in this case is concerned.

Whether Nevada Cablevision did or did not have an ownership interest in a CATV system on or before July 1, 1970, is not of controlling importance in considering the validity of the PSC's order granting to it a certificate of public convenience and necessity on October 13, 1970. The distinction is that if the prohibited cross-ownership interest was in existence on or before July 1, 1970, then there is a deadline for divestiture of KORK–TV of August 10, 1975. But as to ownership interest acquired after July 1, 1970, the cross-ownership rule became presently applicable and operates to proscribe the particular CATV system from carrying the signal of any television broadcast station. The net effect is that Nevada Cablevision is now barred or will be barred on August 10, 1975, from carrying any television signals. Either way Nevada Cablevision qualifications are impaired, particularly as compared to those of Community. Nevada Cablevision acquired no ownership interest within the meaning of Section 76.501 of the FCC's rules simply because of the PSC's opinion and order of May 5, 1969. That opinion and order merely found Nevada Cablevision, as well as Community, to be eligible for certificates of public convenience and necessity if and when they met certain prescribed conditions subsequent.

The real quality ownership interest to which Section 76.501 has reference came into existence when the certificates of public convenience and necessity were issued October 13, 1970. Those certificates constitute the significant governmental authorization, the efficacious instruments contemplated by the statute and anything less were merely instruments of potentiality.

Therefore, the trial court was correct in its conclusion that Nevada Cablevision did not have an ownership interest in existence on or before July 1, 1970.

5. The district court concluded that Nevada Cablevision by reason of the FCC cross-ownership Section 76.501 was either totally disqualified from performing or had at best a limited and qualified ability to perform which was not equal in qualification to Community Cable TV which had the capacity to perform without limitation or qualification. Nevada Cablevision assigns the court's finding as error.

Nevada Cablevision argues that since the cross-ownership of Mr. Reynolds could be resolved by Mr. Reynolds disposing of one or the other of his interests the conclusion of the court should be reversed because its reasoning is wholly speculative.[6] It would have been just as speculative for the district court to conclude that some future development might remove Nevada Cablevision infirmities.

The granting of a certificate of public convenience and necessity to an applicant whose ability to perform is contingent upon the occurrence of future events is not consistent with the requirement of NRS 711.090 that each applicant for a certificate of public convenience and necessity establish his ability to perform efficiently the service for which authority is requested. Nevada Cablevision's position that the cross-ownership problem can be cured by the possible occurrence of future events does indicate that its present ability to perform is limited and qualified and speculative. The imbalance between its status and that of Community is all the more apparent.

6. The additional specification of error raised by the PSC (which joined Nevada Cablevision on appeal) is that the court by declaring the October 13, 1970, certificate of public convenience and necessity to Nevada Cablevision to be null

---

[6]See Footnote 5.

and void exceeded the jurisdiction of the court. That portion of the court's judgment also directed the PSC to issue Community a certificate of public convenience and necessity encompassing the entire greater Las Vegas area.

The statutory procedure for judicial review of orders of the PSC provides that the court may "vacate and set aside any . . . orders on the ground that the . . . service fixed in such order is unreasonable." NRS 704.540. The district court concluded that the granting by the PSC a certificate of public convenience and necessity to Nevada Cablevision was unreasonable, arbitrary, capricious and unlawful because of the cross-ownership rule.

If anything, the action by the district court was superfluous because it merely formalized the result which would obtain by reason of the PSC's own stated conclusion. On June 10, 1969, the PSC rejected Community's petition for clarification of its May 5, 1969, order upon the ground that the substance of the requested clarification was implicit in that order. The requested clarification was that if for any reason either Community or Nevada Cablevision should become unable to perform, the remaining applicant should be awarded the greater Las Vegas area. The effect of the district court's order vacating the granting of a certificate to Nevada Cablevision was to render Nevada Cablevision unable to perform.

Pursuant to the PSC's own order then Community was entitled to a certificate of public convenience and necessity for the entire greater Las Vegas area. This was an implicit consequence of the PSC's order which, as stated, may have been superfluous, but certainly not error.

The judgment of the trial court is affirmed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.