SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, Appellant, v. PUBLIC SERVICE COMMISSION OF NEVADA, An Administrative Agency of the State of Nevada; NOEL A. CLARK, Chairman, EVO A. GRANATA, and HEBER P. HARDY, As Members of Said Commission; HARRAH'S, ANACONDA COMPANY, CARLIN GOLD MINING COMPANY, EAGLE PICHER INDUSTRIES, INC., DUVAL CORPORATION, U.S. GYPSUM, COUNTIES OF WASHOE, CHURCHILL, LYON, DOUGLAS, NYE, HUMBOLDT, STOREY and MINERAL, and the CITIES OF CARSON CITY and WINNEMUCCA, Respondents.

No. 8958

September 8, 1976                                554 P.2d 263

*Richard G. Campbell, John Madariaga,* and *Douglas C. Fletcher,* Reno, for Appellant.

*Robert List,* Attorney General, and *E. Williams Hanmer,* Deputy Attorney General, Carson City, for Respondent Public Service Commission.

*Larry R. Hicks,* District Attorney, and *Richard M. Edelman,* Deputy District Attorney, Reno, for Governmental Respondents.

*Robert W. Marshall, John P. Sande, III, Vargas Bartlett & Dixon,* Reno, for Respondents.

## OPINION

By the Court, GUY, D. J.:[1]

On December 1, 1975, Sierra Pacific Power Company, a Nevada corporation, filed its application with the Public Service Commission of Nevada requesting an approximate $10,525,000 general rate increase. With its application, Sierra filed a schedule of rates pursuant to NRS Chapter 704. The Commission conducted an investigation, held public hearings, and, on May 28, 1976, issued an order entitling Sierra to a $3,772,000 increase.

On June 16, 1976, Sierra filed a complaint in district court seeking judicial review of the Commission's order. Simultaneously, Sierra filed a motion for preliminary injunction to prevent the Commission from enforcing its order. With this motion, Sierra set forth proposed rate schedules which would become effective pursuant to NRS 704.550 should the injunction issue.[2] These proposed schedules were new and different

---

[1]The Governor, pursuant to Article VI, § 4, of the Constitution, designated the Honorable Addeliar D. Guy, judge of the Eighth Judicial District, to sit in place of Mr. Justice CAMERON BATJER, who voluntarily disqualified himself in this case.

[2]NRS 704.550 provides:

"1. No injunction shall issue suspending or staying any order of the commission relating to rates, fares, charges, classification, joint rate or rates, or any order fixing any regulations, except upon application to the court or judge thereof, upon notice given the commission within 20 days of the rendition of the order of the commission complained of, and no such injunction shall issue except upon such notice being first given and a hearing of the petition therefor by the court or judge within 20 days thereafter. In any event all rates, charges and regulations of the commission shall be deemed reasonable and just until set aside by the

from those Sierra originally filed with the Commission, and, for this reason, the district court ruled it had no jurisdiction to issue an injunction which would implement schedules never before considered by the Commission.

Sierra here contends NRS 704.550 permits the district court to issue an injunction effectuating rate schedules which have not been considered or ruled upon by the Commission. We disagree.

In NRS Chapter 704, our legislature has enacted extensive provisions governing rate changes by public utilities. A utility may not change its rate schedules without first giving notice to the Commission. NRS 704.100(1). After receiving this notice, the Commission can suspend the operation of the proposed rate schedules and conduct hearings and investigations concerning the propriety of the new schedules. NRS 704.-110(1) & (2). If the Commission finds the proposed rate schedules are "unjust, unreasonable or unjustly discriminatory," it can permanently suspend their application and, by order, substitute different rate schedules. NRS 704.120(1). If a utility is dissatisfied with the Commission's substituted rate schedule, it may commence action in district court to set aside the order fixing such schedules. NRS 704.540(1). Pending final determination of this action, the district court can enjoin the application of the Commission's substituted schedules. NRS 704.550(1). If the court grants such an injunction and "the order complained of is one which permanently suspends a schedule of rates and charges or a part thereof filed by any public utility . . . , or which otherwise prevents such schedule or part thereof from taking effect, the public utility complaining may keep in effect or cause to be put into effect . . . *the*

court, and in all actions for injunction or otherwise the burden of proof shall be upon the party attacking or resisting the order of the commission to show by clear and satisfactory evidence that the order is unlawful, or unreasonable, as the case may be.

"2. If an injunction is granted by the court and the order complained of is one which permanently suspends a schedule of rates and charges or a part thereof filed by any public utility pursuant to NRS 704.070 to 704.110, inclusive, or which otherwise prevents such schedule or part thereof from taking effect, the public utility complaining may keep in effect or cause to be put into effect, as the case may be, the *suspended schedule or part thereof* pending final determination by the court having jurisdiction, by filing a bond with the court in such amount as the court may fix, conditioned upon the refund to persons, firms, companies or corporations entitled thereto of the amount of the excess if the rate or rates so suspended are finally determined by the court to be excessive." (Emphasis added.)

*suspended schedule or part thereof. . . ."* (Emphasis added.) NRS 704.550(2).

Sierra contends the language of NRS 704.550(2), "part thereof," should be interpreted to mean part of the total monetary increase sought rather than part of the suspended schedules originally filed with its application for new rates. However, by its express language, the statute refers to "the suspended schedule or part thereof." This language is specific, clear, and unambiguous, and it is our duty to enforce it so long as an absurd result does not occur in its application. Cf. Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 503 P.2d 457 (1972); Western Pacific R. R. v. State, 69 Nev. 66, 241 P.2d 846 (1952). See also: State v. V.F.W. Post No. 3722, 527 P.2d 1020 (Kan. 1974); Marquez v. Rapid Harvest Co., 358 P.2d 168 (Ariz. 1960). Reasons for the legislature's choice of language may be discerned. In particular, we note that limiting interlocutory relief to the original rate schedules helps to assure that disposition of the interim motion will be both summary and certain. We do not consider these to be absurd or unwarranted concerns.

On this appeal, we do not hold that new schedules may never be filed and litigated in the district court. Here, we merely hold that those schedules may not be the subject of an injunction issued pursuant to NRS 704.550. It may, of course, be argued that interlocutory relief should be coextensive with any relief which may be afforded in the underlying action, and, that thus, in this instance, the new schedules should be subject to an interlocutory order. However, our legislature, by using the precise language, "suspended schedule or part thereof," circumscribed the interlocutory relief provided by NRS 704.-550. As a rational reason for this language appears, and no absurdity results, we are bound to enforce the statute according to its literal terms.

Affirmed.

GUNDERSON, C. J., and ZENOFF and MOWBRAY, JJ., concur.

THOMPSON, J., dissenting:

I do not agree with the majority opinion. The plain purpose of NRS 704.550 is to afford fair treatment to the utility and to

the rate payer pending judicial review of that part of the Public Service Commission order which is challenged as unreasonable or unlawful. Such fairness may be accomplished only through the utilization of the injunctive provisions of the statute. Of course, an injunction may be issued and the proposed rates put into effect only upon the filing of a bond in an amount sufficient to protect each individual rate payer for his over-payment should the court finally determine that the challenged portion of the Commission's order was correct. NRS 704.-550(2)(3). When such power is exercised neither the utility nor the rate payer is injured. Michigan Consolidated Gas Co. v. Michigan Public Service Commission, 181 N.W.2d 596 (Mich. 1970). On the other hand, when such power is not exercised, and if it is finally determined that the challenged order is unreasonable or unlawful, property of the utility has been confiscated without any method provided by law for its recovery. The legislative purpose in enacting NRS 704.550 was to avoid this consequence.

Accordingly, I construe the phrase "or part thereof" in the statute to allow a utility, pending judicial review, and upon the filing of an appropriate bond, to put into effect schedules of rates which would produce revenue within the limits of the original schedules of rates upon which hearings were held before the Commission. It follows, then, that the district court had jurisdiction to grant the requested preliminary injunction.

A public utility, equally with the rate payer, is entitled to due process. Respectfully, I suggest that this basic tenet of our constitutional law has been ignored by the majority opinion in affirming the decision below.