THE STATE OF NEVADA, PUBLIC SERVICE COMMIS-
SION OF NEVADA, AND REESE TAYLOR, JR., NOEL
A. CLARK, AND EVO A. GRANATA, THE DULY
APPOINTED, QUALIFIED, AND ACTING MEMBERS OF THE PUB-
LIC SERVICE COMMISSION, APPELLANTS, *v.* ZEPHYR
COVE WATER COMPANY, A CORPORATION, RESPOND-
ENT.

No. 9198

September 29, 1978            584 P.2d 698

*Robert List,* Attorney General, and *George M. Keele,* Dep-
uty Attorney General, Carson City, for Appellants.

*Daniel R. Walsh,* Carson City, and *Gary L. Hall,* Sacra-
mento, California, for Respondent.

## OPINION

*Per Curiam:*

This appeal is from a judgment of the district court that vacated an order of the Public Service Commission regarding the Zephyr Cove Water Company and fixed a new rate of return as determined by the district judge.

## THE FACTS

On January 28, 1972, respondent Zephyr Cove Water Company (hereafter Utility) applied to the Public Service Commission of Nevada (hereafter Commission) for a general rate increase. The application was supported by evidence of net worth derived from the Utility's books, and projected expenses for 1972, showing a substantial net loss at current rates and representing an increase of over 1000% from the expenses upon which the Utility's last rate increase had been granted in 1953.

At the hearing before the Commission on June 27, 28 and 29, 1972, evidence presented by the Commission's staff accountant and the representatives of the Utility varied widely in their estimates of the appropriate rate base (Staff, $26,005; Utility, $124,763), and of projected operating expenses (Staff, $23,882; Utility, $37,971).

However, the Commission staff witnesses did not dispute the Utility's contentions that the Utility had shown a net profit in only two of the preceding ten years (1967 and 1968), had paid no dividends since 1952, and had current outstanding debts in the principal amount of $61,580.18 which were accruing interest at the rate of $3,402 per year.

The Utility's estimate of expenses was rejected on the ground that "there was insufficient evidence that such expenses would actually be incurred." The Commission then granted the Utility a rate increase which would produce annual revenues of $32,530. The Commission did not make a finding as to a "reasonable" rate of return.

The Utility appealed the Commission's order. On May 28, 1974, the Honorable James D. Santini, then District Judge of the Eighth Judicial District, who was assigned to hear the appeal, rendered a decision vacating the Commission's order on the ground that "the end result of [the Commission's] determination is not reasonable, justified or supported by substantial evidence of record," and remanding the case to the Commission for reconsideration. Judge Santini's decision was subsequently declared void, since it was entered after the effective date of his resignation. The case was then heard by District Judge Llewellyn A. Young, who also determined, in a decision rendered September 30, 1976, that the Commission's order was arbitrary, unreasonable and confiscatory.

Judge Young in his order went on further to hold that the Utility was entitled to a rate structure which would generate revenues of $52,155. This figure was predicated upon the Judge's own findings that the proper rate base to be applied was $100,000 (book value of common stock equity), that a reasonable rate of return upon this base was 8%, and that expenses of $42,395.35 should be allowed. Judge Young ordered that such revenues would "remain in effect until the Public Service Commission establishes a reasonable rate of return for the company [upon its application within three years]".

This appeal is taken by the Commission, et al., from the district court's decision of September 30, 1976. Appellants contend that the district court erred in determining that the Commission's order was unreasonable, and that the court's jurisdiction was limited solely to vacating the order of the Commission, if found unreasonable, rather than proceeding to fix another rate of return.

## THE ISSUES

### I

## THE DISTRICT COURT'S ACTION IN AUTHORIZING A RATE SCHEDULE PREDICATED UPON THE COURT'S INDEPENDENT REVIEW OF THE UTILITY'S REVENUES.

The procedure for judicial review of the Commission's order is established by NRS Ch. 704. The Utility's suit in this instance is authorized by NRS 704.540(1), which provides, in pertinent part,

> Any party in interest being dissatisfied with an order of the commission fixing any rate or rates . . . may within 90 days commence an action in the district court of the proper county against the commission and other interested parties as defendants *to vacate and set aside any such order* on the ground that the rate fixed in such order is unlawful or unreasonable. . . ." (Emphasis added.)

This was not a petition for mandamus, *cf.* Southwest Gas Corp. v. Public Serv. Comm'n, 92 Nev. 48, 546 P.2d 219 (1976), nor did the judgment purport to direct the Commission to accept the rate schedule authorized by the court. The court, rather, authorized directly the collection of revenues from the Utility's customers, without either approval by the Commission or compliance with statutory provisions for the interlocutory stay of a commission order (see Sierra Pac. Power v. Public Serv. Comm'n, 92 Nev. 522, 554 P.2d 263 (1976); NRS 704.550). There is no statutory authorization for such a procedure.

Nor does the court's judgment comply with the standards for judicial review of a Commission's determination. The overriding limitation upon the court's function in the review of an administrative agency's determination is that "neither the trial court, nor this court, [may] substitute its judgment for the administrator's determination." North Las Vegas v. Public Serv. Comm'n, 83 Nev. 278, 281, 429 P.2d 66 (1967). Review of the district court's findings reveals that the court did, indeed, "substitute its judgment" for that of the Commission. It must, therefore, be set aside.

## II

## THE REASONABLENESS OF THE
## COMMISSION'S ORDER.

The function of this court upon review is essentially the same as that of the district court: to review the Commission's decision in order to determine whether it was "based upon substantial evidence," and did not constitute an "abuse of discretion." North Las Vegas v. Public Serv. Comm'n, *supra,* 83 Nev. at 281. The basic question before the court is whether the Commission acted within its statutory authority to fix "such rate or rates, tolls, charges or schedules as shall be just and reasonable." NRS 704.120(1).

> A public utility is entitled to such rates as will permit it to earn a return on the value of the property which it employs for the convenience of the public equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties; but it has no constitutional right to profits such as are realized or anticipated in highly profitable enterprises or speculative ventures.

Bluefield Waterworks & Improvement Co. v. West Va. Pub. Serv. Comm'n, 262 U.S. 679, 692–93 (1923), as quoted in Nevada Power Co. v. Public Serv. Comm'n, 91 Nev. 816, 825, 544 P.2d 428 (1975).

This is the result by which the Commission's order must be measured. "[I]t is not our province to quarrel with methods used by the commission, . . . no matter how faulty they may have been as means or guides in arriving at sundry determinations involved either in evaluating the property or determining the net return *if the end result of the orders is to permit the company a just and reasonable return.*" Bell Tel. Co. v. Pub. Serv. Comm'n, 70 Nev. 25, 34, 253 P.2d 602 (1953) (emphasis added). If analysis of the Commission's determination of the appropriate rate base or the net return reveals an arbitrary decision, not supported by the law or the record, so that a "false conclusion" as to the actual rate of return has been reached, the Commission's order must be vacated. Bell Tel. Co. v. Pub. Serv. Comm'n, *id.*

We have reviewed the record before the Commission. Suffice it to say that it does not support the Commission's findings and that it results in an unfair, unjust, and unreasonable rate of return.

This court has quoted with approval the definition of a "reasonable" rate of return articulated by the United States Supreme Court in Bluefield Waterworks & Improvement Co. v. Pub. Serv. Comm'n, 262 U.S. 679, 693 (1923): "The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties." Quoted in Nevada Power Co. v. Public Serv. Comm'n, *supra,* 91 Nev. at 825.

The record shows that the Utility has not enjoyed a reasonable rate increase in almost 20 years; has not paid its stockholders a dividend in 20 years; has consistently been unable to generate operating income sufficient to meet current and deferred expenses. The most impressive evidence in which the effects of the past are reflected is in the accumulation of over $60,000 in debts—a figure which exceeds considerably the depreciated plant value of the Utility.

In the case at hand, the Commission authorized rates which would produce a revenue of $32,530; this figure is *less* than the legitimate anticipated expenses which should have been allowed.[1] Thus the "rate of return" upon the investors' capital—no matter what its value is determined to be—is actually negative. Since this *cannot* represent a "just and reasonable return", by any standard, the Commission's order must be vacated.[2]

[1] The Commission, for example, refused to include insurance and fringe benefits for employees in its allowance for expenses of plant operation and maintenance, although there was nothing in the record to support a finding that such expenses would be unreasonable. *See* Public Serv. Comm'n v. Ely Light & Power, 80 Nev. 312, 323–24, 393 P.2d 305 (1964). Nor did the Commission allow a projected increase in the cost of power for pumping, despite the testimony of its staff accountant that a rate increase had been granted the supplying power company. Finally, the Commission accepted the recommendation of its staff that no increase in general expenses be estimated for 1972, although the Utility presented uncontradicted evidence that the Utility's management had gone largely uncompensated for many years. Adequate compensation for administrative expenses would appear to be a prerequisite for the level of sound management sought by the Commission.

[2] Judge Santini in his order of reversal summed up the inequity of the Commission's action: "Regulation which adversely affects the financial integrity of the utility affects not only the present quality of service rendered but also discourages future capital investment and expenditure. Unreasonable, arbitrary, or capricious regulation which fails to provide a sufficient return to induce the utility to 'perform completely and effectively its function for the public' is to be condemned. Market St. Ry. Co. v. Railroad Comm., 24 Cal.2d 378, 150 P.2d 196 (1944); [*aff'd*] 324 U.S. 548 (1945), NRS Chapter 704.

"The Public Service Commission of Nevada has substantial discretion in selecting the appropriate methodology for [affixing] a fair and reasonable rate

We conclude, therefore, that judgment of the district court vacating the order of the Public Service Commission must be affirmed. However, that part of the judgment wherein the district judge fixed a reasonable rate of return for the Utility must be reversed and the case is remanded to the Commission for that purpose. It is so ordered.[3]

---

schedule calculated to meet the needs of the public and those of the utility enterprise. However, where strict and inflexible adherence to rules and regulation [produces] and unacceptable 'end result', the Commission must exercise its discretion to insure the financial and functional stability of the utility applicant.

"In the instant case, the Commission has permitted form to prevail over substance. And, although Appellant has been made to suffer financial discomfort, the ultimate burden of the Commission's Order will undoubtedly fall upon the individual consumer."

[3]The Governor designated the Honorable Michael E. Fondi, Judge of the First Judicial District, to sit in the place of the HONORABLE NOEL E. MANOUKIAN, Justice, who was disqualified. Nev. Const. art. 6, § 4.