SOUTHWEST GAS CORPORATION, a California Corporation, Appellant, v. PUBLIC SERVICE COMMISSION OF NEVADA, an Administrative Agency of the State of Nevada, HEBER P. HARDY, Chairman; EVO A. GRANATA and JANET S. MacDONALD, as Members of the Commission, NEVADA POWER COMPANY, Respondents.

No. 12862

September 30, 1982                          651 P.2d 95

*Guild, Hagen & Clark,* Reno, and *Charles H. McCrea, Sr.,* Las Vegas, for Appellant.

*Zev E. Kaplan,* Legal Counsel, Carson City, for Respondents.

## OPINION

*Per Curiam:*

Pursuant to the terms of a written agreement appellant Southwest Gas Corporation ("Southwest") was to provide the Nevada Power Company ("Nevada Power") with natural gas to burn as fuel for the generation of electrical power. Subsequent to this agreement the respondent Public Service Commission of Nevada ("Commission"), in apparent response to foreseeable shortages in the supply of natural gas, established certain priorities of service in its General Order 18 to be followed by suppliers of natural gas, including Southwest. General Order 18 enumerated levels of service priorities as determined by the end use of the gas. Complete curtailment at a subordinate level was required prior to any curtailment at a higher level. Nevada Power consumed natural gas at varying priority levels, including the priority-5 level designated for use as boiler fuel.

Subsequent to the entry of General Order 18, the Federal Power Commission, now known as the Federal Energy Regulatory Commission ("FERC"), issued its Opinion 800-B requiring the El Paso Natural Gas Company ("El Paso") to disburse large volumes of gas to certain East-of-California distributors, including Southwest, which had been unjustly discriminated against in prior gas distributions. Pursuant to the mandate of Opinion 800-B, El Paso provided Southwest with 6.4 million Mcf of gas (hereinafter referred to as "800-B gas"). Based upon information supplied by El Paso to the effect that the curtailment of priority-3 gas was "highly probable" and priority-2 gas was a "distinct possibility" during the forthcoming winter heating season, Southwest determined that it would husband the 800-B gas as a protective measure to its customers within priority levels 1, 2 & 3. Due to this determination, Southwest refused to supply Nevada Power with priority-5 gas for use in electrical generation.

This matter came before the Commission, and it determined, by way of an order and opinion entitled Docket No. 1511, that

even though the husbanding program implemented by Southwest with respect to the 800-B gas would, under proper circumstances, be both prudent and laudable, only the Commission was empowered to institute such curtailment practices. The Commission then held that the curtailment of priority-5 gas by Southwest was unauthorized without prior approval of the Commission. Southwest filed a petition for judicial review of the Commission's determination and the district court affirmed Docket No. 1511 in all respects.

Southwest has appealed, contending that the Docket No. 1511 decision unlawfully infringes upon its internal management prerogatives.

The standard of review upon which our determination must be based, is essentially the same as that of the district court, i.e., whether the Commission's decision was supported by substantial evidence and was within lawful perimeters of discretion. State PSC v. Zephyr Cove Water Co., 94 Nev. 634, 584 P.2d 698 (1978). The parties are in basic agreement as to the evidence, but rely on competing legal precepts in support of their positions. Southwest invokes the managerial prerogative doctrine in opposition to the Commission's claim of exclusive right under legislative grant and FERC Opinion 800-B.

Under Nevada law (NRS 703.150), the ommission is obligated to supervise and regulate the operation and maintenance of Southwest in accordance with the provisions of NRS ch. 704. The Commission also has an undoubted right to regulate service curtailments as part of its general authority to supervise and regulate. American Smelting & Refining Co. v. Federal Power Commission, 494 F.2d 925, 932 (C.A.D.C. 1974), cert. denied 419 U.S. 882. Here, however, the Commission had not acted with respect to the 800-B gas, and decided against Southwest on the basis that the latter could not husband the gas as a preservation measure in favor of high priority users without first receiving permission or authority from the Commission. We find no statutory basis for the Commission's position.

Pursuant to NRS 704.040, Southwest is required to furnish reasonably adequate service and facilities. It must do so in conformity with the dictates of General Order 18 which specified a system of priority distribution of a limited, wasting resource in accordance with greatest public need. Southwest sought to secure the availability of natural gas to its highest priority users during peak use periods by storing the 800-B gas. The Commission held that Southwest's storage program was not "logically

inconsistent'' with the provisions of General Order 18 but that it represented a significant expansion of the confines of the Order. Whether Southwest's decision to husband the 800-B gas exceeded the terms of General Order 18 is, however, not the issue. The question before us is whether any statute or regulation prohibited Southwest from using its own initiative in storing the 800-B gas. We have been directed to no such statute or regulation. To the contrary, it would appear that Southwest responded reasonably to the mandates of NRS 704.040 and General Order 18 by husbanding its 800-B gas in order to assure adequate supplies to the high priority residential, small and large commercial users who would be most adversely affected by an interruption of service. Indeed, the Commission observed in its answering brief on appeal that it is not contending that Southwest "was acting in its best corporate interests when it unilaterally attempted to sequester the . . . 800-B gas. . . ."

We quite agree with the district court's conclusion that great respect should be accorded the Commission's interpretations of its own rules and regulations. And, as previously observed, we are equally persuaded that the Commission has the power to fully regulate all curtailment practices by public utilities. It is clear, however, that it has not yet done so, and under Nevada's statutes, curtailment authority is not specifically granted to the Commission or denied to the public utilities. Nor has the Commission, by prior rule or regulation, denied Southwest curtailment authority. Under such circumstances it was well within the management prerogatives of Southwest to exercise its best judgment regarding the provision of adequate service to priority end users through husbanding the 800-B gas. *See* Public Service Commission of Nevada v. Ely Light & Power Company, 80 Nev. 312, 324, 393 P.2d 305 (1964).

The Commission attempts to support its position by referring us to that portion of the FERC Opinion No. 800-B that passes jurisdiction to the state Commissions to effectuate a system of retail distribution of the 800-B gas in accordance with the public interest. It is thus argued that the Commission had exclusive authority over the disposition of the 800-B gas. We do not dispute the proposition that the Commission could have determined how the gas was to be used. It did not. Its standing General Order 18 provided a priority system of distribution which, under conditions of product shortfall, caused Southwest to use management initiative in determining its responsibility in the distribution of the 800-B gas. The Commission simply cannot be heard to say that the only prerogative available to Southwest was to seek instruction or direction from the

Commission before curtailing the 800-B gas. In spite of the Commission's knowledge of the continuing, "troublesome shortage" of natural gas in Southwest's service area and the latter's statutory responsibility to provide reasonably adequate service in accordance with the priorities established by General Order 18, the Commission had not seen fit to exercise its regulatory control over the 800-B gas. In the meantime, Southwest, which was not prohibited by statute or regulation from managing its newly found supply of gas, proceeded according to its perception of public need as defined by the Commission. Under these circumstances, we know of no rule of law which would deny the right of Southwest to initiate a husbanding program resulting from a good faith and patently reasonable attempt by its management to fulfill its responsibilities under the law. *Public Service Commission of Nevada, id.*

If the Commission had set forth, in a prompt and timely fashion, specific guidelines instructing Southwest how to store or distribute the 800-B gas then, absent an abuse of the Commission's discretion, Southwest would have been obligated to follow such guidelines. The record before us, however, does not demonstrate any such directional guidance by the Commission at the time Southwest received the 800-B gas from El Paso. Absent such guidelines, it became an appropriate function of the internal management of Southwest to take prudent and efficient steps to preserve the 800-B gas since it operated under a good faith belief that such steps were necessary to protect higher priority customers during a forthcoming period of peak demand.

Our determination herein is not to be construed as meaning that the curtailment of natural gas supplies is a decision only to be made by the internal management of a gas utility. We hold only that absent a prior and specific regulation of the Commission concerning the curtailment of natural gas, a gas utility can, in good faith, curtail such supplies in accordance with a general order previously establishing levels of priority.

By reason of the foregoing, we hold that the Commission abused its discretion in denying Southwest the right to manage the 800-B gas supply in accordance with existing law and regulations, and absent direction to the contrary from the Commission.

The judgment of the district court is reversed.