SOUTHWEST GAS CORPORATION, A CALIFORNIA CORPORATION, PETITIONER, v. PUBLIC SERVICE COMMISSION OF NEVADA, NOEL A. CLARK, CHAIRMAN, HEBER P. HARDY AND EVO A. GRANATA, AS MEMBERS OF THAT COMMISSION, RESPONDENTS.

No. 8501

January 28, 1976                    546 P.2d 219

*Guild, Hagen & Clark, Ltd.,* of Reno, *Charles H. McCrea* and *Constance L. Howard,* of Las Vegas, for Petitioner.

*Robert List,* Attorney General, and *E. Williams Hanmer,* Chief Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, SMART, D. J.:[1]

This original proceeding, commenced by petitioner, Southwest Gas Corporation, seeks a writ of mandamus to compel the respondents, Public Service Commission of Nevada and its members, Noel A. Clark, Heber P. Hardey and Evo A. Granata, to reinstate a general rate increase application filed by Southwest Gas and subsequently dismissed by the Commission. For the reasons hereinafter set forth, we have concluded that the writ should issue.

By the enactment of Chapter 704 of the 1975 Statutes of Nevada, the state legislature amended NRS 704.100 by adding three subsections designated (3), (4) and (5). The text of NRS 704.100, as so amended, is set forth in the margin.[2] This amendment became effective July 1, 1975.

---

[1]Mr. Justice ZENOFF voluntarily disqualified and took no part in this decision. The Governor, pursuant to Article VI, § 4 of the Constitution, designated District Judge Stanley Smart to participate in this case.

[2]"1. No changes shall be made in any schedule, including schedules of joint rates, or in the rules and regulations affecting any and all rates or charges, except upon 30 days' notice to the commission, and all such changes shall be plainly indicated, or by filing new schedules in lieu thereof 30 days prior to the time the same are to take effect. The commission, upon application of any public utility, may prescribe a less time within which a reduction may be made.

"2. Copies of all new or amended schedules shall be filed and posted in the stations and offices of public utilities as in the case of original schedules.

"3. Except as provided in subsection 4, the commission shall not consider an application by a public utility if the justification for the new schedule includes any items of expense or rate base which are set forth as justification in a pending application, are the subject of pending litigation, or have been considered and disallowed by the commission or a district court.

"4. A public utility may set forth as justification for a rate increase items of expense or rate base which have been considered and disallowed by the commission, only if those items are clearly identified in

At the time of the effective date of the foregoing amendment, Southwest Gas had pending before the Commission an application for general rate increase which had been filed on March 26, 1975, and assigned Docket No. 241 by the Commission. On September 22, 1975, after hearings throughout the State of Nevada, the Commission entered its Opinion and Order in Docket No. 241. Those portions of that Opinion and Order which are pertinent to this present proceeding will be mentioned below.

On November 5, 1975, Southwest Gas commenced an action in the Second Judicial District Court of Washoe County for judicial review of a portion of the Opinion and Order of the Commission in Docket No. 241. This action was commenced pursuant to NRS 704.540. Specifically, Southwest Gas sought review of that portion of the Commission's order in Docket No. 241 disallowing increased depreciation rates for its transmission systems, distribution mains and services, and office furniture and equipment. The prayer of the complaint read as follows: "That the Commission's Order No. 241 relating to depreciation expense for Plaintiff's transmission, distribution and office furniture and equipment should be declared null and void and of no force and effect." The prayer further sought general relief.

In the interim, on October 30, 1975, the Commission had granted the petition of various intervening parties for a rehearing in Docket No. 241. The record does not reflect that any date for the rehearing has been set by the Commission.

On October 24, 1975, Southwest Gas filed with the Commission another general rate increase application which was assigned Docket No. 529 by the Commission. A number of items were set forth by Southwest Gas as justification for the

the application and new facts or policy considerations for each item are advanced in the application to justify a reversal of the commission's prior decision.

"5. If the commission receives an application that is within the prohibition of subsection 3, it shall, within 30 days, notify the public utility that the application is dismissed.

"6. The commission shall determine whether a hearing shall be held when the proposed change in any schedule stating a new or revised individual or joint rate, fare or charge, or any new or revised individual or joint regulation or practice affecting any rate, fare or charge, will result in an increase in annual gross revenue as certified by the applicant of $2,500 or less.

"7. In making such determination the commission shall first consider all timely written protests, any presentation the staff of the commission may desire to present, the application and any other matters deemed relevant by the commission."

rate relief sought in Docket No. 529. It is not necessary that these be detailed here. It is sufficient to note that the application did not set forth increased depreciation as an item of justification. However, several of the items of justification did constitute items of rate base or expense previously disallowed by the Commission. In compliance with NRS 704.100(4), Southwest Gas clearly identified these items in the application, and set forth new facts or policy considerations for each such item which, in the opinion of Southwest Gas, would justify a reversal of the Commission's prior decision with respect to them.

Based upon the foregoing, and without notice to Southwest Gas or other interested parties, and without any hearing, the Commission did, on November 20, 1975, issue an order dismissing the application of Southwest Gas in Docket No. 529. This order listed the following as the basis for dismissal:

"(1) Litigation is pending in Docket No. 241; and

"(2) A rehearing is pending in Docket No. 241 . . .; and

"(3) The statute [NRS 704.100(3)] requires the dismissal of this application."

The full text of the pertinent provisions of this order is set forth in the margin.[3]

---

[3]"IT APPEARING That on October 25, 1975, Southwest Gas Corporation ("Applicant") filed an application with the Public Service Commission of Nevada ("Commission") seeking an increase in natural gas rates on its Southern and Northern Systems; and

"IT FURTHER APPEARING That the 1975 Nevada Legislature passed into law Chapter 704, 1975 Statutes of Nevada, effective July 1, 1975, of which Section (1)3 amends NRS 704.100 as follows:

"Except as provided in subsection 4, the commission shall not consider an application by a public utility if the justification for the new schedule includes any items of expense or rate base which are set forth as justification in a pending application, are the subject of pending litigation, or have been considered and disallowed by the commission or district court."

"IT FURTHER APPEARING That litigation is pending in the Second Judicial District Court of the State of Nevada in and for the County of Washoe relative to the most recent rate proceeding instituted by Applicant, styled as Docket No. 241; which lawsuit is entitled *Southwest Gas Corporation v. Public Service Commission of Nevada et al, No. 308509,* and

"IT FURTHER APPEARING That said litigation seeks to vacate and set aside the order of the Commission in Docket No. 241 pursuant to NRS 704.540 on the grounds that such order is unlawful and unreasonable with respect to the additional depreciation expense requested by Applicant, which was disallowed by the Commission in Docket No. 241; and

"IT FURTHER APPEARING That should Applicant be successful

On November 24, 1975, Southwest Gas filed with this Court its application for writ of mandamus, and on December 10, 1975, the Court made and entered its order directing that an answer be filed and fixing oral argument for January 12, 1976, in accordance with the provisions of NRAP 21(b).

The parties have briefed and argued a number of issues in the case, all of which may be summarized in two general issues which must be decided:

1. Whether mandamus is a proper remedy, given the facts here presented and the requirements of NRS 34.160 and NRS 34.170, together with the subsidiary issue of whether this Court should require such proceedings to be instituted in the first instance in the District Court.

2. Whether the Commission acted beyond its statutory authority under NRS 704.100(3) and NRS 704.100(5) in summarily dismissing the application of Southwest Gas in Docket No. 529.

NRS 34.160 provides, in part, that a writ of mandamus ". . . may be issued by the supreme court, a district court or judge of the district court, to compel the performance of an act which the law especially enjoins as a duty resulting for an office, trust or station; . . ."

---

in such litigation, the order of the Commission in Docket No. 241 will be vacated and set aside, and the nullification of such order will affect items of expense and rate base determined in said order and will result in further adjustment of revenues resulting in rates differing from those found to be just and reasonable by the Commission in Docket No. 241; and

"IT FURTHER APPEARING That any actual adjustment to expense and rate base from that found and determined by the Commission to be just and reasonable in Docket No. 241, resulting from litigation instituted by Applicant, will by necessity alter the financial premises on which Docket No. 529 is founded; and

"IT FURTHER APPEARING That pursuant to petitions for rehearing, the Commission did, on October 24, 1975 grant a rehearing in Docket No. 241 regarding rate design, which issue is also fundamental to application of Southwest Gas Corporation in this proceeding, to wit: Docket No. 529; and

"Good Cause Appearing Therefor,

"IT IS ORDERED that the application on file herein (Docket No. 529) shall be, and the same is hereby DISMISSED on the grounds that

(1) Litigation is pending in Docket No. 241; and

(2) A rehearing is pending in Docket No. 241 as more fully set out hereinabove; and

(3) The statute set forth herein requires the dismissal of this application."

NRS 34.170 provides, in part, that the ". . . writ shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law."

The Commission first contends that the act sought to be compelled by Southwest Gas is a discretionary act on the part of the Commission and not, therefore, subject to mandamus. Both Southwest Gas and the Commission correctly state the law in this regard by quoting from Teeter v. District Court, 64 Nev. 256, 263, 180 P.2d 590, 594 (1947), as follows:

> "Performance of a duty, enjoined upon an officer by law, without leaving him any discretion in its performance, may be compelled by mandamus, if there be no other adequate remedy."

The position of the Commission in this regard is wholly untenable. NRS Chapter 703 establishes the Public Service Commission of the State of Nevada, and, in Section 703.150, sets forth the duties of the Commission as follows: "The Commission shall supervise and regulate the operation and maintenance of public utilities, as named and defined in Chapter 704 of NRS, in conformity with the provisions of Chapter 704 of NRS." The Commission is a legislative creation and possesses those powers and is required to perform those duties set forth by the legislature in NRS Chapters 703 and 704. NRS 704.070 to NRS 704.130, inclusive, set forth the powers and duties of the Commission with respect to applications such as that of Southwest Gas in Docket No. 529 requesting a change in its rate schedules. Unless such an application is properly dismissed in accordance with the provisions of NRS 704.100(3) and (5), the Commission has the clear duty to process such application to conclusion in accordance with the appropriate provisions of NRS Chapter 704. Having concluded that the application was improperly dismissed, as will be discussed more fully below, mandamus is clearly proper to compel the reinstatement and further consideration of the application in Docket No. 529. This proceeding does not seek to control the result that may be reached by the Commission after reinstatement and consideration of the application, but only to compel the Commission to act, as it is required to do by NRS Chapter 704. As stated in State Board of Barber Examiners v. Walker, 192 P.2d 723, 729 (Ariz. 1948): " 'The general rule of law is that where the performance of an act is a matter of discretion on the part of a public officer, mandamus does not lie to compel him to do the act. . . . But where as a matter of law he is bound to act in some manner, even though he have discretion as to how he shall act, he can be compelled to act.' "

The Commission next contends that an alternative remedy is available to Southwest Gas under the provisions of NRS 704.-540 which provides for judicial review of certain orders of the Commission. Specifically, subsection (1) of that statute reads as follows:

"Any party in interest being dissatisfied with an order of the Commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within 90 days commence an action in the district court of the proper county against the Commission and other interested parties as defendants to vacate and set aside any such order on the ground that the rate fixed in such order is unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable."

This Court held last year, in Public Serv. Comm'n v. Community Cable TV, 91 Nev. 32, 42, 530 P.2d 1392, 1398 (1975), that the phrase "an order of the Commission" as used in NRS 704.540, ". . . applies to final rather than interlocutory actions of the PSC since it speaks in terms of orders that fix rates, fares, charges, classifications, practices or services." However, without reaching the question of whether or not the order of dismissal under consideration in this case is a "final order" subject to review under NRS 704.540, we have concluded that the section simply does not apply in this case since the order of dismissal did not, and did not purport to, fix any rate or rates, fares, charges, classifications, joint rate or rates, or fix any regulations, practices or services.

The Commission contends that the order of dismissal of the application in Docket No. 529 did "fix" the amount of rate increase sought by Southwest Gas, and that it "fixed" that amount at zero. Since the order of dismissal was admittedly entered without a hearing, and since a hearing is required before the Commission may "fix" any rates in excess of $2,500 (NRS 704.100(6) and NRS 704.120(1)) the position of the Commission cannot be sustained.[4] Accordingly, the procedures of NRS 704.540 for judicial review of the order of dismissal are not available to Southwest Gas.

---

[4]The application of Southwest Gas in Docket No. 529 states that the proposed rates would produce additional revenues for Southwest Gas of $4,201,282.00 per year, and Southwest Gas asserts in its opening brief that the proposed rates in Docket No. 529 will result in an average of more than $11,500.00 per day over its revenues under the present schedule of tariffs. The Commission has not questioned these figures.

The Commission next contends that the order of dismissal may be reviewed under NRS 233B.130(1) which provides as follows:

"Any person aggrieved by a final decision in a *contested case* is entitled to judicial review thereof under this chapter. Nothing in this section shall be deemed to limit utilization of trial de novo review where provided by statute, but this section shall provide an alternative means of review in those cases. Any preliminary, procedural or intermediate agency act or ruling shall be immediately reviewable in any case in which review of the final agency decision would not provide an adequate remedy." (Emphasis added.)

NRS 233B.030(2) defines the phrase "contested case" as ". . . a proceeding, including but not restricted to rate making and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency *after an opportunity for hearing. . . .*" (Emphasis added.)

Southwest Gas contends that, since there was no opportunity for hearing prior to the entry of the order of dismissal by the Commission, this does not qualify as a "contested case," subject to judicial review under NRS 233B.130. The argument is persuasive. Even more persuasive, however, is a careful reading of NRS 233B.140 which prescribes the scope of, and limitations on, judicial review under NRS Chapter 233B. NRS 233B.140(4) provides, in part: "The review shall be conducted by the court without a jury and *shall be confined to the record.*" (Emphasis added.) The entire record before the Commission in Docket No. 529 consists of the application of Southwest Gas and the order of the Commission dismissing that application. As will be pointed out more fully below, the Commission seeks to justify its dismissal of Docket No. 529 on the basis of matters known to it but outside the record in Docket No. 529. If such extrinsic matters are necessary to uphold the order of dismissal, and if such matters would not be a part of the record before the court in a review under NRS 233B.130 and NRS 233B.140, the review must, necessarily, be something less than "adequate" and would be, in fact, useless.

Accordingly, we hold that, upon the facts of this case, Southwest Gas has no plain, speedy and adequate remedy in the ordinary course of law, and that mandamus is, therefore, appropriate.

As this Court stated in State Ex Rel. Blad v. Jones, 70 Nev. 141, 143, 261 P.2d 519, 520 (1953): ". . . [C]oncurrent jurisdiction in mandamus is held by the district courts to which no resort has yet been had in this matter. It is the practice of this court in exercise of its discretion to refuse to accept original jurisdiction in the first instance under these circumstances." However, numerous exceptions to the practice can be found in the cases based upon a variety of factual circumstances. For example, the Court recently entertained an original proceeding in mandamus without requiring prior resort to the district court on the grounds that the application for the writ involved "a matter of grave public concern." State ex rel. List v. County of Douglas, 90 Nev. 272, 524 P.2d 1271 (1974). While no clearly stated and fixed rules have been established by which it can be determined in advance whether this Court will entertain an original proceeding in mandamus, the general considerations in such matters are set forth in Annot., 165 A.L.R. 1431, wherein the compiler states:

> "Thus, as a general proposition, the rule has been laid down that the conferring of original jurisdiction in mandamus upon appellate courts does not contemplate that such courts will take jurisdiction of all mandamus cases which parties may think best to bring before them, but that such original jurisdiction is conferred so that such courts of the highest authority in the state shall have the power to protect the rights, interests, and franchises of the state, and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large, . . ." (Emphasis added.) Id. at 1435.

In this case we are confronted with a consideration of the conduct of the Public Service Commission of this State in dismissing a general rate application filed by a public utility serving a substantial number of persons located throughout the State. We are asked to review that action in light of newly enacted provisions of the statutes which have not heretofore been interpreted or construed by this Court. The manner in which these provisions are interpreted and applied by the Commission in this and in subsequent cases will profoundly affect the people and the public utilities of this State. Accordingly, we have concluded to entertain the writ without requiring a prior application to the district court.

The propriety of the Commission's action in dismissing Docket No. 529 can best be analyzed by answering three questions based upon the component parts of NRS 704.100(3). Those questions are:

1. Did the application of Southwest Gas in Docket No. 529 include as justification for the new schedule any items of expense or rate base which were set forth as justification in a pending application?

2. Did the application of Southwest Gas in Docket No. 529 include as justification for the new schedule any items of expense or rate base which were the subject of pending litigation?

3. Did the application of Southwest Gas in Docket No. 529 include as justification for the new schedule any items of expense or rate base which had been considered and disallowed by the Commission or a district court, and not clearly identified in the application with new facts or policy considerations for each such item to justify a reversal of the Commission's prior decision?

The only "pending application" cited by the Commission as requiring an affirmative answer to the first question, above, is Docket No. 241 in which a rehearing is pending. Southwest Gas contends that the rehearing in Docket No. 241 does not constitute "a pending application" of Southwest Gas, since Southwest Gas did not petition for the rehearing, and, moreover, that the relief sought by the petitioners for rehearing in that proceeding will have no effect upon the overall rate structure of Southwest Gas, but will, even if granted, only change the allocation of rates among the various customers of Southwest Gas. This latter point was conceded by counsel for the Commission during oral argument.[5] However, the Commission asserts that if the rehearing results in a change in the Commission's Opinion and Order in Docket No. 241, such change could "affect" its consideration of Docket No. 529. In answer to this, it need only be noted that NRS 704.100(3) does not prohibit an application which may be "affected" by the Commission's decision in a pending application, but prohibits only

---

[5]By the Court: "The rehearing that's pending, that has only to do with the allocation of the payment of the rates."

Mr. Hanmer: "That is true, however. . . ."

[Counsel for the Commission then proceeded to qualify this answer stating, basically, that the granting of the relief sought by the petitioners for rehearing in Docket No. 241 would "affect" some of the premises on which Docket No. 529 is based.]

an application which "includes any item of expense or rate base which are set forth as justification in a pending application." Had the legislature intended the Commission to have such broad authority of dismissal, it could have easily have said so when it enacted the 1975 amendments to NRS 704.100.

The Commission contends, however, that it must be allowed reasonable latitude in reviewing applications submitted by public utilities to consider other proceedings before it and not be automatically bound by the labels placed by the applicant on items of justification for new rate schedules. It is upon this basis that the Commission seeks to justify its dismissal of Docket No. 529.[6] The Commission, in effect, argues that it is entitled to take "notice" of other proceedings pending before it and other proceedings that may be pending elsewhere and of which it has knowledge. That may very well be the case, but it does not end our consideration of this matter. As the Supreme Court of the United States noted in Ohio Bell Tel. Co. v. Comm'n, 301 U.S. 292, 301–302 (1937):

> ". . . [M]oreover, notice, even when taken, has no other effect than to relieve one of the parties to a controversy of the burden of resorting to the usual forms of evidence. . . . 'It does not mean that the opponent is prevented from disputing the matter by evidence if he believes it disputable.' . . . There has been more than an expansion of the concept of notoriety beyond reasonable limits. From the standpoint of due process—the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out."

---

[6]From the transcript of oral argument:

By the Court: ". . . [Y]ou have an application before you that, on its face, appears regular. Correct?"

Mr. Hanmer: "That may be correct. Yes."

By the Court: "And, now, let's assume that, if it were irregular on its face, it would be subject to dismissal and subject to appeal by the usual provisions to the district court. Let us assume that then there would be an adequate remedy. Now, . . . here what you have really done is imported into these proceedings by your own knowledge that is dehors this record considerations relating to the other rate procedure, haven't you?"

Mr. Hanmer: "That's correct."

By the Court: "None of that appears in the record of these proceedings that you have dismissed. Right?"

Mr. Hanmer: "That's correct."

The requirements of notice and an opportunity to be heard, recently delineated by this Court in Nevada Power Co. v. Public Serv. Comm'n, 91 Nev. 816, 544 P.2d 428 (1975), apply not only to a public utility seeking to have the Commission consider and determine issues the utility has not raised in its application but also to the Commission itself when it proposes to consider matters outside the record in the exercise of its authority to dismiss under NRS 704.100(3) and (5).

Based upon the foregoing, the answer to the first question stated above must, necessarily, be in the negative.

With respect to the second question hereinabove posed, the same analysis applies. The only "pending litigation" is the action commenced by Southwest Gas in a Washoe County District Court challenging that portion of the Commission's Opinion and Order in Docket No. 241 relating to depreciation. Again, it is conceded by the Commission, that the application in Docket No. 529 does not include depreciation as an item of expense or rate base as justification for that application. However, the Commission again contends that the outcome of that litigation could "affect" its consideration of the application in Docket No. 529 and that it has the right to take notice of such pending litigation. Based upon the same consideration set forth in answering question number one, the answer to question number two must, likewise, be in the negative.

As previously pointed out, the application of Southwest Gas in Docket No. 529 does include items of expense or rate base which had been considered and disallowed by the Commission in Docket No. 241. As to each such item, however, new facts or policy considerations were set forth to bring into effect the exception contained in NRS 704.100(4). The order of dismissal entered by the Commission in the present case does not cite this portion of NRS 704.100(3) as a basis for the dismissal.

The Commission has not contended in its brief or in oral argument that the application fails to comply with the statute in this regard. Accordingly, the answer to question number three must also be in the negative.

Thus, we conclude, that the Commission's dismissal of the application of Southwest Gas in Docket No. 529 cannot be sustained on the basis of any information on the face of the application or on the basis of any information or evidence properly before the Commission and properly subject to consideration by the Commission at the time the order of dismissal was entered.

Accordingly, we order the issuance of a peremptory writ of

mandamus to compel the reinstatement by the Commission of the application of Southwest Gas in Docket No. 529 for further proceedings by the Commission in accordance with the provisions of NRS Chapter 704.[7]

Southwest Gas has asserted a number of additional constitutional challenges to both the 1975 amendments of NRS Chapter 704 and the procedures followed by the Commission in this case. Having concluded that the issues here involved could be resolved by proper statutory construction and interpretation, as hereinabove set forth, we need not and do not consider the constitutional issues so advanced.

The Commission has expressed concern that, if the writ is granted in this case, it will be automatically bound by any representations made or labels used by utilities in their future applications—that the Commission will be unable to look behind items of justification listed to uncover the "true" basis upon which the applications are based and which would bring them within the prohibition of NRS 704.100(3). We do not so hold in this case. The Commission is free to establish such procedures for this purpose as may be required to carry into effect the legislative intention expressed in the amendments contained in Stats. of Nev. 1975, ch. 704, p. 1450 et seq. (Cashman Photo v. Nevada Gaming Comm'n, 91 Nev. 424, 538 P.2d 158 (1975)), so long as such procedures comply with the requirements of due notice and hearing on such factual issues and so long as the time limitation of NRS 704.100(5) is met.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

[7]The Commission, having concluded that it has authority under the provisions of NRS 704.100(3) and (5) to dismiss the application of Southwest Gas in Docket No. 529, did not enter an order of suspension in accordance with NRS 704.110(2). Southwest Gas, in its reply brief and at the time of oral argument, stipulated that, in the event this Court ordered the issuance of a writ of mandamus, the order of dismissal be regarded as a suspension order for a period of 150 days in accordance with NRS 704.110(2), thus extending until April 22, 1976 the time within which the Commission may conclude its proceedings—before the proposed rates contained in Docket No. 529 become effective automatically. The peremptory writ herein ordered is issued subject to that stipulation.