THE PUBLIC SERVICE COMMISSION OF THE STATE OF
NEVADA, Appellant, v. SIERRA PACIFIC POWER
COMPANY, Respondent.

No. 17436

March 31, 1987                                    734 P.2d 1245

[Rehearing denied August 27, 1987]

*William H. Kockenmeister,* Carson City, for Appellant.

*Woodburn, Wedge, Blakey & Jeppson* and *William E. Peterson,*
Reno, for Respondent.

## OPINION

*Per Curiam:*

This appeal represents the aftermath of a 1975 Public Service Commission (PSC or Commission) order which was reversed and vacated by the district court. We thereafter affirmed the judgment of the district court on appeal. Public Serv. Comm'n v. Southwest Gas, 99 Nev. 268, 662 P.2d 624 (1983). The thrust of this appeal focuses on the asserted right of Sierra Pacific Power Company (Sierra) to recover annualized operating expenses associated with thirteen rate increases granted by the PSC during the period between April 30, 1976 and December 31, 1982. In certain instances, annualized operating expenses were not requested; in all instances there were no appeals.

In December, 1975, Sierra Pacific applied to the PSC for rate increases for its water, gas and electric departments. Included in its application for a rate increase were annualized operating expenses for insurance, depreciation and tax incurred on a new plant which had been dedicated to public use during the 1975 test year (September 1, 1974 through August 31, 1975) or which would be incurred within a certification period occurring within six months of the end of the test year.[1]

Sierra claimed these expenses were recoverable. The PSC disagreed. Sierra appealed and eventually prevailed.

In August, 1976, while case No. 36626, *Southwest Gas, supra,* was pending in district court, Sierra filed new rate increase applications, Docket Nos. 863, 864 and 865, with the PSC covering electricity, gas and water for a succeeding year. The applications were filed in the alternative. Part One of each application sought rate increases primarily attributable to the increasing cost of providing utility services after the 1975 test year. Part Two of each application sought rate increases for the same types or categories of expenses which had been disallowed by the PSC

---

[1]A test year is the theoretical measuring tool the PSC uses to prognosticate revenue necessary to operate a utility which seeks a rate increase for the upcoming year. The statute governing a test year in Nevada is found at NRS 704.110(3).

in its earlier opinion: annualized depreciation, insurance and taxes which Sierra had incurred for its new plant dedicated to public service after the 1975 test year.

Upon finding that the categories of expense in Part Two of each application were the subject of pending litigation, the PSC held that it could not consider Part Two of the respective applications and dismissed the rate applications in their entirety.[2]

On April 30, 1984, approximately one year after this court effectively affirmed the district court's decision granting the challenged annualized operating expenses, *Southwest Gas, supra,* Sierra filed Advice Letters with the PSC petitioning for the annualized operating expenses which had been improperly disallowed by the PSC for Dockets 574, 575 and 576, which were the subject of the initial litigation. The Commission responded on September 27, 1984, with an order permitting Sierra to impose a one year surcharge on its gas and electric tariffs of $1,342,000, plus interest, to recoup the disallowed operating expenses. Later, on November 13, 1984, Sierra filed a petition for an Advisory Opinion and Declaratory Order with the PSC requesting approval of a surcharge of $14,119,855, plus carrying charges over three years. The combination of the surcharge and carrying charges totaled $17,000,000 for the annualized operating expenses assertedly incurred during the pendency of judicial review of the first challenged dockets. In its plea for relief, Sierra specified that:

> Petitioner now seeks recovery of certain expenses and related interest for the post-Docket period Nos. 574, 575 and 576 [sic] April 30, 1976, through December 31, 1982. Such expenses and calculated interest are identical in character to those covered by the Judgment in Case No. 36626 and

---

[2]The pertinent finding of the Commission is as follows:

The initial issue to be determined is whether Applicant's separation of each of its applications into two parts (each having separate rate schedules) requires the Commission to consider each part separately as suggested by Applicant. We are of the opinion that each application must be considered as one inseparable application, consisting of two parts only for the purpose of attempting to satisfy the requirements of NRS 704.100 subsections 3 and 4.

If Applicant did not have pending litigation in this case and the items of expense in dispute had only been considered and disallowed by the Commission, then the procedure followed by Applicant would have clearly been appropriate and within the exception set forth in NRS 704.100(3). However, in this case Applicant has elected to exercise its right of judicial review related to the Commission's disallowance of certain items of expense in Docket No. 574 et al., and thereby has clearly filed the instant applications, including the same items of expense previously disallowed, in violation of NRS 704.100(3). Under the provisions of NRS 704.100(5) the Commission must dismiss the applications designated as Docket Nos. 863, 864 and 865 in their entirety.

for which recovery has now been allowed by the Commission in Docket Nos. 84-517 and 84-518. The revenue requirements including mill tax and uncollectibles and interest related to these expenses are as follows for each of Applicant's Nevada jurisdictional operations:

|  | PRINCIPAL | INTEREST | TOTAL |
|---|---|---|---|
| Electric | $7,770,189 | $2,475,762 | $10,245,951 |
| Gas | 991,200 | 301,767 | 1,292,967 |
| Water | 1,960,918 | 620,019 | 2,580,937 |
| Total | $10,722,307 | $3,397,548 | $14,119,855 |

Sierra contends, and the district court agreed, that the PSC must now entertain Sierra's claim for its annualized operating expenses incurred during the pendency of the original litigation. Unconvinced, the Commission seeks reversal on appeal. We have determined, despite certain misgivings, that reversal is warranted.

We turn first to the source of our misgivings, Sierra's foundation for the relief accorded it by the trial court. First, as noted above, the PSC dismissed Dockets 863, 864 and 865 since those dockets contained requests for annualized operating expenses, the same type of expenses rejected by the Commission under contested Dockets 574, 575 and 576. The PSC concluded that since the allowability of annualized operating expenses was the subject of pending litigation involving the latter dockets, NRS 704.100(3) and (5) precluded the Commission from considering any Sierra rate application that incorporated such expenses. Sierra maintained that it detrimentally relied on the PSC's ruling and thereafter omitted requests for annualized operating expenses until this court finally resolved the issue in its favor in *Southwest Gas.* Facially, Sierra's contention is compelling. The Commission, having reasonably construed the statute as prohibiting its consideration of any applications for rate increases that include items of expense generically questioned in pending litigation, ostensibly left Sierra with no alternative other than to proceed with rate increase requests that omitted expense categories under challenge in the courts. Impliedly, recovery of such expenses would be deferred until a final adjudication of their allowability. If determined to be allowable, the expenses would be recoverable; if not, Sierra would have to absorb the loss. Any contrary view would appear to subject Sierra to a manipulated loss of property without a remedy, in short, a denial of due process. The trial court so held and ordered the Commission to evaluate, calculate and allow recovery of the annualized operating expense categories that were validated in the original litigation. Moreover, the trial judge observed that since the legislature provided

no right of appeal from an application dismissal by the PSC under the circumstances here present, it was apparent that eventual recovery would be allowed if the utility company prevailed in its challenge to an expense-category denial by the Commission. The court viewed any other interpretation of NRS 704.100 as a deprivation of meaningful judicial review.

As previously noted, the legal symmetry of Sierra's position is difficult to resist. There are, however, a number of additional factors that must be considered in the resolution of this appeal.

### *The Statute*

The trial court joined with Sierra in concluding that NRS 704.100(3) and (5) operated to prevent Sierra from even requesting annualized operating expenses during the pendency of litigation embracing their allowability as an issue. The district court held:

> As long as the disputed items of expense or rate base are the subject of pending litigation, a utility is absolutely forbidden by statute from applying to the Commission to obtain any relief for such items and the Commission is forbidden by statute from even considering any such application. This prohibition continues until litigation is concluded.

The Commission, in dismissing Dockets 863, 864 and 865, reasoned at length that the statute deprived it of recurring jurisdiction to consider items of expense that previously had been disallowed by the Commission and were the subject of pending litigation. The Commission maintained that NRS 704.100(4) would not permit consideration of previously rejected items as long as they were under litigation. Indeed, the Commission concluded that it would undermine the process of judicial review if the PSC had jurisdiction to reconsider the status of previously denied expenses while the same issue was under submission to the judiciary for adjudication.

In pertinent part, NRS 704.100 reads as follows:

> 3. Except as provided in subsection 4 or in NRS 707.350, the commission shall not consider an application by a public utility if the justification for the new schedule includes any items of expense or rate base which are set forth as justification in a pending application, are the subject of pending litigation, or have been considered and disallowed by the commission or a district court.
>
> 4. A public utility may set forth as justification for a rate increase items of expense or rate base which have been considered and disallowed by the commission, only if those items are clearly identified in the application and new facts

> or considerations of policy for each item are advanced in the application to justify a reversal of the commission's prior decision.
>
> 5. If the commission receives an application that is within the prohibition of subsection 3, it shall, within 30 days, notify the public utility that the application is dismissed.

We have not had occasion to interpret the referenced provisions of NRS 704.100 within the context of the instant proceeding. In Southwest Gas Corp. v. Public Serv. Comm'n, 92 Nev. 48, 546 P.2d 219 (1976), we did conclude that NRS 704.100(3) did not prevent the Commission from considering expense issues which were not specifically under pending litigation. *Id.* at 58-59, 546 P.2d at 226. We now conclude, contrary to the position of the parties and the trial court, that subsection 4 of NRS 704.100 will permit the Commission to reconsider its prior rulings concerning items of expense or rate base even though they are the subject of pending litigation if the involved items are clearly identified in the application and "new facts or considerations of policy for each item are advanced in the application to justify a reversal of the Commission's prior decision." Such an interpretation supplies meaning to the phrase "[e]xcept as provided in subsection 4" contained in subsection 3, and actually promotes, rather than frustrates, the prospects for an expeditious resolution of pending litigation. The PSC should be able to consider new facts and policy variations that could resolve pending litigation. Moreover, in reconsidering prior determinations, litigation may be avoided when new facts and policy considerations make it apparent that a change of PSC policy is in order. Absent such an interpretation of the statute, ratepayers could be burdened with unanticipated surcharges many years down the road.

Notwithstanding the Commission's interpretation of the statute and Sierra's apparent acquiescence therein, both parties deviated therefrom in their future conduct. Subsequent to the dismissal of Dockets 863, 864 and 865 and during the pendency of the litigation, 1976-82, Sierra submitted several applications that included annualized operating expense as justification for the requested rate increase.[3] Moreover, in selected instances the PSC

---

[3] a. Docket Nos. 2856, 2857 and 2858, decided October 29, 1980, wherein Sierra requested certain annualized expenses.

b. Docket No. 81-660, decided May 3, 1982, wherein Sierra requested, and received, annualized operating expenses.

c. General Order No. 3, Rule 16, effective January 1, 1979, wherein annualized operating expenses were considered in a rulemaking proceeding in which Sierra was a party.

d. Docket Nos. 82-266 and 82-369, decided September 27, 1982, a rulemaking proceeding in which Sierra was a party and which, by Commission regulation, allowed annualized operating expenses and revenues.

granted such requests;[4] in no instance was the entire application dismissed. Furthermore, Sierra attended rulemaking proceedings before the Commission. These culminated in a Commission regulation, promulgated September 27, 1982, allowing annualized operating expenses and revenues.[5]

Properly or improperly, the only time that the PSC adhered to its position that NRS 704.100(3) and (5) was a jurisdictional bar to consideration of items at issue in pending litigation was in connection with the dismissed dockets. It thus appears that, in fact, both Sierra and the PSC tacitly disregarded the rigid position taken by the Commission in its order dismissing Dockets 863, 864 and 865. Nevertheless, since Sierra's recovery of annualized operating expenses, omitted or deleted from the thirteen dockets at issue, was undoubtedly prejudiced by the Commission's formal position concerning the dictates of NRS 704.100(3) and (5), we would have little difficulty affirming the judgment of the trial court if our ruling impacted solely on the PSC. Unfortunately, as will be shown, the ultimate burden of such a decision would be borne in large measure by innocent third parties who never benefited from Sierra's services.

## Equitable Considerations

The uncompensated annualized expenses at issue in this appeal were accrued from 1976 to 1982. If this court affirmed the decision below, many ratepayers who would pay the resulting surcharge would not have been consumers of Sierra's power during the relevant time period.[6] Thus, many non-users would be forced to subsidize the loss which would otherwise fall upon Sierra. Of course, the Commission must have realized the potential for such an eventuality when it, in effect, told Sierra it would have to delay attempts to recover its annualized operating expenses until after the process of judicial review had run its course. If Sierra had remained content to rely on the rigid PSC pronouncement, and if the Commission had consistently adhered thereto, we would be faced with a somewhat different perspective in equity. Unfortunately, both the PSC and Sierra vacillated on

---

[4]Docket No. 81-660, decided May 3, 1982.

[5]Docket Nos. 82-266 and 82-369, decided September 27, 1982.

[6]In 1977, Sierra Pacific Power served 109,167 customers in Nevada. *Sierra Pacific Power, FERC Form #1: Annual Report of Major Electric Utilities, Licensees and Others* (1977). In 1985, Sierra Pacific served 155,010 customers in Nevada. *Sierra Pacific Power, FERC Form #1: Annual Report of Major Electric Utilities, Licensees and Others* (1985). This is a 42 percent increase in the number of consumers during an eight year period. This percentage will grow significantly by the time the proposed surcharge could have been exacted.

the subject to the point where it is not difficult to weigh the equities between Sierra and the uninvolved but potentially burdened consumers.

Since Sierra continued to supplicate the PSC for annualized operating expenses on a selective basis during the period of litigation, and since the PSC entertained such applications without dismissal, it is apparent that Sierra could have applied for such expenses in each of the contested thirteen dockets and appealed from any denial by the PSC. In so doing, Sierra would have provided notice that it ultimately intended to recover its rejected expenses through means of a surcharge. At least the consuming public would have been technically apprised of Sierra's intent to impose an eventual surcharge on its customers.

We also view as significant the failure of Sierra to seek review of the Commission's preclusive interpretation of NRS 704.100. Apparently content with the Commission's position, Sierra waited a period of years before seeking recovery of an increasingly large accrual of annualized expenses. In doing so, it assumed the risk that the Commission's interpretation would not survive the scrutiny of this court.

The Commission contends that the equitable doctrine of laches applies to Sierra's belated pursuit of the annualized expenses accruing throughout the period of litigation. We are constrained to agree. Laches will be invoked when an actual or presumable change of circumstances makes it inequitable to grant relief. Miller v. Walser, 42 Nev. 497, 517, 181 P. 437, 443 (1919). In Cooney v. Pedroli, 49 Nev. 55, 62-63, 235 P. 637, 640 (1925), we declared that "[w]henever the passage of time has brought in its train anything that works to the disadvantage of a party and makes it doubtful if equity can be done, relief will be denied." The history of the instant claim reveals significant inaction on the part of Sierra. The surcharge for annualized expenses approved by the district court had its genesis in a 1975 Commission decision. That decision was overturned in district court on April 11, 1979 and we affirmed the court's judgment in April, 1983. Sierra filed its new surcharge request with the PSC in November, 1984, six and one-half years after the first district court decision and twenty months after this court's affirmation. As previously noted, Sierra requested, and on occasion received, annualized operating expenses during the pendency of this litigation, yet did not appeal the denial of such expenses. Nor did it take any measures to give notice of its intent to recover annualized expenses which were never presented to the PSC for consideration.

Sierra opposes the imposition of laches on grounds that the doctrine may not be invoked if there has been an impediment to

prosecuting a claim. Lubin v. Lubin, 302 P.2d 49, 59 (Cal. Ct.App. 1956); Secret Valley Land Co. v. Perry, 202 P. 449 (Cal. 1921). As discussed above, NRS 704.100, as interpreted by the PSC, was initially and at least ostensibly an impediment to Sierra's claim of entitlement to annualized operating expenses. In practical effect, however, neither the statute nor the PSC precluded Sierra from requesting such expenses in docket submissions subsequent to Dockets 863, 864 and 865. The PSC in fact permitted Sierra to make such requests without dismissing Sierra's rate applications.

If this court were to affirm Sierra's entitlement to the surcharge, large numbers of consumers who never benefited from the lower-priced power would be forced to pay for it. Moreover, many who did benefit have undoubtedly relocated outside the area affected by the surcharge, thus avoiding their fair share of the assessment. It is apparent, therefore, that substantial prejudice and inequity would result from an imposition of the surcharge.

If Sierra had proceeded with diligence to challenge the Commission's interpretation of the statute or, at the least, had recognized and acted upon the Commission's relaxed approach to its earlier pronouncement, we are confident that much of the delay and prejudice could have been avoided or minimized. In any event, such diligence would have alerted consumers and consumers' groups that Sierra would be seeking recovery of a known amount of expenses that had been rejected by the PSC. Since it failed to do so, we hold that Sierra's right to recovery by means of a surcharge is barred by laches.

### Retroactive Ratemaking

Our disposition on the issue of laches makes it unnecessary to address the issue of whether an allowance of the surcharge would constitute unlawful retroactive ratemaking. We do note, however, that if NRS 704.100 had prevented Sierra from seeking its annualized operating expenses during the pendency of litigation, Sierra's entitlement to recover at the successful conclusion of judicial review would have been clear. To conclude otherwise would be tantamount to a taking of property without due process of law.

### Conclusion

For reasons stated above, we reverse the judgment of the district court and direct the entry of judgment on behalf of the PSC in accordance with this opinion.