SIERRA PACIFIC POWER
COMPANY, Plaintiff,

v.

Scott CRAIGIE, Jo Ann Kelly, Michael Pitlock, Stephen Wiel, Thomas Stephens, in their capacity as Commissioners of the Public Service Commission of the State of Nevada; Richard Bryan, Governor, State of Nevada; and The Public Service Commission of the State of Nevada, and the State of Nevada, Defendants.

No. CV–N–88–649–ECR.

United States District Court,
D. Nevada.

May 10, 1990.

William E. Peterson, Reno, Nev., for plaintiff.

Leslie T. Miller, Gen. Counsel, Public Service Com'n of Nevada, Carson City, Nev., for defendants Jo Ann Kelly, Michael Pitlock, Stephen Wiel, Thomas Stephens and Public Service Com'n of Nevada, Scott Craigie.

Scott W. Doyle, Deputy Atty. Gen., Carson City, Nev., for defendants State of Nev. and Richard Bryan.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Before the Court is a Motion to Dismiss filed by defendants Scott Craigie, Jo Ann Kelly, Michael Pitlock, Stephen Wiel, Thomas Stephens, and the Public Service Commission of the State of Nevada (document # 4). Oral argument on the issues presented herein was conducted on March 12, 1990. After full consideration of all the relevant arguments, the Court has determined that defendants' motion to dismiss shall be granted.

## BACKGROUND

The genesis of this case lies in a ruling made by the Public Service Commission in 1975. Since that time, this case, or some related case, has been addressed by the district courts of the State of Nevada, the Nevada Supreme Court, and a writ of certiorari has been denied by the United States Supreme Court. Because the issues presented in this complaint have been fully adjudicated before a court of competent jurisdiction, this Court has determined that now is the time to stop the merry-go-round of litigation and let these issues rest once and for all.

In December, 1975, plaintiff Sierra Pacific Power Company ("SPPC" or "Sierra Pacific") requested that the Public Service Commission ("PSC" or the "Commission") authorize rate increases in SPPC's gas, electric, and water departments, in order that SPPC might recover certain "annualized operating expenses"[1] for that year. Sierra Pacific requested these annualized operating expenses in docket numbers 574, 575, and 576 (the "initial litigation"). On May 28, 1976, the Commission denied SPPC's request in dockets 574, 575, and 576 to recover annualized operating expenses. Sierra Pacific appealed this decision to the state district court in Nevada, and the state district court reversed the decision of the PSC. On appeal to the Nevada Supreme Court, the district court decision was affirmed. *Public Serv. Comm'n v. Southwest Gas Corp.*, 99 Nev. 268, 662 P.2d 624 (1983) (*Southwest Gas*). The effect of this decision was to nullify a 1975 PSC order, and to allow recovery of annualized operating expenses for the year 1975.

In light of the Nevada Supreme Court's ruling in *Southwest Gas*, SPPC filed an advice letter with the PSC in April of 1984, again requesting the previously disallowed 1975 annualized operating expenses for dockets 574, 575, and 576. That request was granted by the PSC on September 27, 1984.

The present case concerns recovery of additional annualized operating expenses incurred by SPPC during the pendency of the initial litigation (1976–1982). In August of 1976, during the pendency of the initial litigation, SPPC made a request for annualized operating expenses in dockets 863, 864, and 865. That request was dismissed in its entirety by the PSC pursuant to NRS 704.100. The PSC interpreted NRS 704.100(3) and (5)[2] to preclude it from con-

1. Annualization of operating expenses is an accounting methodology use to project operating expenses—the costs for insurance, taxes, and depreciation—over a 12–month period, even though those expenses were not experienced for a full test year.

2. In pertinent part, NRS 704.100 reads as follows:

3. Except as provided in subsection 4 or in NRS 707.350, the commission shall not consider an application by a public utility if the justification for the new schedule includes any items of expense or rate base which are set forth as justification in a pending application, are the subject of pending litigation, or

have been considered and disallowed by the commission or a district court.

4. A public utility may set forth as justification for a rate increase items of expense or rate base which have been considered and disallowed by the commission, only if those items are clearly identified in the application and new facts or considerations of policy for each item are advanced in the application to justify a reversal of the commission's prior decision.

5. If the commission receives an application that is within the prohibition of subsection 3, it shall, within 30 days, notify the public utility that the application is dismissed.

sidering the requested annualized operating expenses in dockets 863, 864, and 865, since those expenses were of the same type that had been denied by the PSC in contested dockets 574, 575, and 576, and were then the subject of pending litigation. There were other instances in which SPPC sought recovery of annualized operating expenses for the period 1976–1982. However, SPPC never appealed the PSC's denial of such expenses.

After *Southwest Gas* concluded that SPPC was entitled to recover annualized operating expenses for 1975, SPPC calculated the total annualized operating expenses incurred during that initial litigation. Thirteen rate increases were granted by the PSC between April 30, 1976, and December 31, 1982. Because SPPC incurred annualized operating expenses for each rate increase, SPPC sought to recover those annualized operating expenses which had been previously disallowed by the PSC. Therefore, SPPC applied to the PSC for an order awarding it approximately 14 million dollars for the years 1976–1982. That request was denied by the PSC.

On appeal, the district court for the State of Nevada reversed the Commission, and ordered that the Commission allow the expenses. The Nevada Supreme Court reversed, and held that SPPC was not entitled to recover the annualized operating expenses in *Public Serv. Comm'n v. Sierra Pacific Power Co.*, 103 Nev. 187, 734 P.2d 1245 (1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 981 (1988) (*Sierra Pacific*).

It is the denial of this latest request for annualized operating expenses that is the subject of the present complaint. Sierra Pacific is raising essentially the same claim here as was adjudicated in *Sierra Pacific*. Sierra Pacific seeks relief on three bases: first, it contends that the denial of annualized operating expenses for the years 1976–1982 constitutes a taking of property without due process of law and a deprivation of equal protection of the law in violation of the fourteenth amendment and 42 U.S.C. § 1983. Second, SPPC asserts that an actual controversy exists between the SPPC

and the Commission. Finally, SPPC contends that it has been "wrongfully deprived of the use and enjoyment of its constitutional rights and privileges and has and will continue to sustain immediate and irreparable harm and injury as a consequence thereof."

Defendants' motion to dismiss is based on several grounds. Because this court finds that the present complaint is barred by the doctrine of res judicata, it is unnecessary for us to consider the remainder of defendants' arguments.

## RES JUDICATA AND COLLATERAL ESTOPPEL

Res judicata and collateral estoppel are two related doctrines, the purposes of which are to "limit to one the number of times a defendant can be vexed by the same claim or issue and [to] promote efficiency in the judicial system by putting an end to litigation." *Gilbert v. Ben–Asher*, 900 F.2d 1407, 1410 (9th Cir.1990). Broadly speaking, the term "res judicata" can encompass both issue preclusion (collateral estoppel) and claim preclusion (merger and bar). However, more narrowly defined, res judicata precludes litigation of a claim or cause of action that should have been raised in a previous proceeding, while collateral estoppel precludes relitigation of issues actually and necessarily decided in a prior suit. *See generally* 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §§ 4406–4426 (1981). To minimize confusion, we follow the lead of the Supreme Court by using the terms issue and claim preclusion in the following discussion, rather than collateral estoppel and res judicata. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984).

■ In issue preclusion, or estoppel by record, "it is the record of the former case rather than the judgment that stands as a barrier to relitigation." *Clark v. Clark*, 80 Nev. 52, 56, 389 P.2d 69, 71 (1964). Issue preclusion applies to bar to relitigation of those issues actually litigated and decided, even though the causes of action may be

substantially dissimilar. *Id.; Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1. On the other hand, claim preclusion encompasses the law of merger and bar, and refers to "the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1.

When a party asserts the preclusive effect of a state court judgement, 28 U.S.C. § 1738 (1966) requires that federal courts give a state court judgement the same full faith and credit as that judgement would receive under the law of the state in which the judgment was rendered. *Migra*, 465 U.S. at 81, 104 S.Ct. at 896; *Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 784 (9th Cir.1986). This requirement of full faith and credit applies with equal force to claims brought in federal court under 42 U.S.C. § 1983. *See Caldeira v. County of Kauai*, 866 F.2d 1175, 1177 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989). Framing a claim under section 1983 does not entitle a litigant to an additional day in federal court, where that claim has been, or should have been, raised and adjudicated in a prior proceeding before a court of competent jurisdiction. *Migra*, 465 U.S. at 83–85, 104 S.Ct. at 897–98.

In evaluating the preclusive effect of a state court judgement, we are bound by the state law of preclusion. *Migra*, 465 U.S. at 81, 104 S.Ct. at 896; *Rutledge v. Arizona Bd. of Regents*, 859 F.2d 732, 735 n. 2 (9th Cir.1988); *Takahashi v. Board of Trustees*, 783 F.2d 848, 850 (9th Cir.1986), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). Therefore, we look to Nevada law to determine the extent to which the present action is barred by the Nevada Supreme Court's decision in *Sierra Pacific*.

There is some discrepancy in Nevada concerning availability and requirements of claim preclusion. For example, in *Horvath v. Gladstone*, 97 Nev. 594, 596, 637 P.2d 531, 533 (1981), the court explained the doctrine of res judicata thus:

The doctrine of *res judicata* precludes parties or their privies from relitigating a cause of action which has been finally determined by a court of competent jurisdiction.... [T]hree inquiries are pertinent: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the action in question; (2) whether there was a final judgement on the merits; and (3) whether the party against whom the judgement is asserted was a party or in privity with a party to the prior adjudication.

Because of the emphasis on identity of issues, this definition appears to use "res judicata" in its more global usage, which may encompass both claim and issue preclusion, rather than in its more narrowly defined sense of claim preclusion. *See Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1. Rather, this definition more accurately describes issue preclusion, or collateral estoppel. Again in *City of Reno v. Nevada First Thrift*, 100 Nev. 483, 488, 686 P.2d 231, 234 (1984), the court appears to use the terms res judicata and collateral estoppel interchangeably:

In order for res judicata or collateral estoppel to be applied here, each of three questions must be answered affirmatively: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Paradise Palms Community Assoc. v. Paradise Homes*, 89 Nev. 27, 31, 505 P.2d 596, 599 (1973), *cert. denied*, 414 U.S. 865 [94 S.Ct. 129, 38 L.Ed.2d 117] (1973).

However, footnote number 2 of *Schwartz v. Schwartz*, 95 Nev. 202, 206, n. 2, 591 P.2d 1137, 1140 n. 2 (1979), the court notes that "application of the doctrine of *res judicata* required a showing that there has been a previous action between the same parties involving the same subject matter in which a final judgment on the merits has been rendered with respect to the same cause of action (citations omitted)." This statement reflects the more

common application of res judicata to preclusion of a claim or cause of action. *Accord Gilbert v. Warren*, 95 Nev. 296, 301, 594 P.2d 696, 699 (1979) (res judicata bars "subsequent litigation between the parties or their privies involving identical causes of action"); *Landex, Inc. v. State ex rel. List*, 94 Nev. 469, 475, 582 P.2d 786, 790 (1978) (res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction).

 Our research reveals that *Clark v. Clark* is the only Nevada Supreme Court opinion that distinguishes claim preclusion (res judicata) from issue preclusion (collateral estoppel). There, the court states that the doctrine of res judicata is limited to "the situation where there is a bar to or a merger of the former cause of action," whereas collateral estoppel "may apply even though the causes of action are substantially different, if the same fact issue is presented." *Clark*, 80 Nev. at 55–57, 389 P.2d at 71. Although the same rules of privity and finality of judgment apply in both instances, the bar of res judicata (claim preclusion) applies to matters which *could have been* litigated in the prior action. In contrast, application of collateral estoppel (issue preclusion) is limited to issues actually litigated and necessarily determined in the first action. *Id.*

 Using the analysis set forth in *Clark*, we are convinced that SPPC is barred by issue preclusion. To the extent that SPPC is attempting to relitigate the issue of whether it is entitled to recover annualized operating expenses for the years 1976–1982, it is barred by issue preclusion, since the Nevada Supreme Court ruled in the negative on that issue in *Sierra Pacific*. The decision in *Sierra Pacific* works to bar the issues brought by SPPC in the present complaint.

First, the parties in this case are identical to those in the prior litigation. *See Sierra*

*Pacific*, 103 Nev. at 187, 734 P.2d at 1245. Issue preclusion is being asserted against SPPC, who was a party in the previous litigation. Second, the judgement in *Sierra Pacific* is a valid, final judgement rendered by a court of competent jurisdiction. *Sierra Pacific* was decided on the merits, i.e., on the "real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form." *Clegg v. United States*, 112 F.2d 886 (10th Cir.1940). The Nevada Supreme Court specifically and thoroughly addressed SPPC's asserted right to recover annualized operating expenses incurred during the pendency of the initial litigation, and ruled on that basis. *Sierra Pacific*, 103 Nev. at 191–193, 734 P.2d at 1248–1250. Finally, the issue decided in the prior litigation is identical to the issue presented in this cause of action. Here, Sierra Pacific asserts that NRS 704.100 precluded it from presenting these requests for annualized operating expenses for the years 1976–1982 because similar requests were the subject of pending litigation. Sierra Pacific claims that the denial of such expenses constitutes a taking without due process. In *Sierra Pacific*, the court analyzed this claim and held that NRS 704.100 did not prohibit SPPC from requesting, nor did it preclude the Commission from considering, applications for rate increases even though they may be the subject of pending litigation, where the conditions of subsection (4) were satisfied.[3] The issue presented here by SPPC turns on the same evidence, involves the same right, and arises out of the same nucleus of operative facts as the issue litigated in *Sierra Pacific*. SPPC had a full and fair opportunity to advance its arguments concerning its entitlement to those operating expenses, and its request was denied by a court of competent jurisdiction.

In denying its request, the Nevada Supreme Court found that Sierra Pacific was barred by laches from recovering those ex-

---

**3.** The Nevada Supreme Court held that applications for rate increases are properly considered by the Commission where the items involved "are clearly identified in the application and 'new facts or considerations of policy for each

item are advanced in the application to justify a reversal of the Commission's prior decision.'" *Public Serv. Comm'n*, 103 Nev. at 192, 734 P.2d at 1249.

penses, where SPPC had maintained an inconsistent position regarding the alleged prohibition of NRS 704.100. It appears that Sierra Pacific made several other applications for recovery of annualized operating expenses during the pendency of the litigation, notwithstanding their apparent acquiescence in the Commissioner's interpretation of NRS 704.100. *See Sierra Pacific*, 103 Nev. at 192 n. 3, 734 P.2d at 1249 n. 3.

Sierra Pacific contends that it was deprived of property without due process of law, and that it is the victim of retroactive application of the fresh interpretation of NRS 704.100. Sierra Pacific argues that if only it had known that it could have requested the contested expenses during the pendency of the initial litigation, it would have done so. Sierra Pacific points to the new interpretation of subsection (4) and claims that its retroactive application prejudices Sierra Pacific's ability to recover.

However, Sierra Pacific *did* make additional requests for annualized operating expenses during the pendency of the litigation, apparently uninhibited by the Commission's prior ruling that such requests were impermissible under the Commission's former interpretation of the statute. It is Sierra Pacific's own indecisive reliance on NRS 704.100 that is the linchpin of the court's ruling in *Sierra Pacific*. Assuming, *arguendo*, that subsection (4) was retroactively applied to Sierra Pacific, Sierra Pacific was not prejudiced: the newly enunciated interpretation of NRS 704.100 was consistent with the actions of SPPC in filing applications for annualized operating expenses during the pendency of the initial litigation.[4] That the ruling of the Nevada Supreme Court was novel or unexpected does not negate the fact that the issues presented in this complaint were raised and addressed by the Nevada Supreme Court.

Sierra Pacific is requesting this Court to rule on an issue already fully adjudicated and decided. Plaintiff's fourteenth amendment "taking" claim was addressed and dismissed by the Nevada Supreme Court. As noted earlier, Sierra Pacific's reliance on section 1983 does not provide an additional opportunity to be heard, where that issue has been litigated and decided. Where the plaintiff had a full and fair opportunity to litigate its constitutional claim, as Sierra Pacific did here, section 1983 claims are not excepted from the general rule of preclusion. *See Takahashi*, 783 F.2d at 850.

Although the issue is not so framed in its briefs, at oral argument SPPC further contended that the Nevada Supreme Court erred in deciding *Sierra Pacific*, in that the decision amounted to a taking without due process of law. However, the Nevada Supreme Court is not a named defendant in this action. Therefore, pursuing a claim against the PSC for alleged errors committed by the Nevada Supreme Court is misplaced.

■ In addition, to the extent that SPPC is requesting this court to correct alleged constitutional errors of the *Sierra Pacific* decision, we decline to do so. As a court of original jurisdiction, this court has no authority to sit in review of state court judgements. *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir.1986). According to 28 U.S.C. § 1257, such review is proper only in the United States Supreme Court. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983). Furthermore, there is no exception to this rule for constitutional challenges. *Worldwide Church*, 805 F.2d at 891 (citing *Feldman*, 460 U.S. at 484–86, 103 S.Ct. at 1316–17). State courts are deemed equally competent to decide federal constitutional is-

---

**4.** (a) Docket Nos. 2856, 2857, and 2858, decided October 29, 1980, wherein Sierra Pacific requested certain annualized expenses.

(b) Docket No. 81–660, decided May 3, 1982, wherein SPPC requested, and received, annualized operating expenses.

(c) General Order No. 3, Rule 16, effective January 1, 1979, wherein annualized operating expenses were considered in a rulemaking proceeding in which SPPC was a party.

(d) Docket Nos. 82–266 and 82–369, decided September 27, 1982, a rulemaking proceeding in which SPPC was a party and which, by Commission regulation, allowed annualized operating expenses and revenues.

sues, and any other rule would be wasteful of limited judicial resources and cause "unnecessary friction between state and federal courts." *Id.* (citations omitted).

A federal district court may not exercise appellate jurisdiction of a state court, although a "general" constitutional challenge that does not require review of a final state court decision in a particular case is permissible. *Worldwide Church,* 805 F.2d at 891. The court in *Worldwide Church* acknowledged that "[t]his distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination may be subtle, and difficult to make." *Id.*

In *Feldman,* the Supreme Court held that if the constitutional challenge raised in the United States District Court is "inextricably intertwined" with the state court's determination of the issue presented, "then the district court is in essence being called upon to review the state court decision." *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315 n. 16. In *Worldwide Church,* the Ninth Circuit adopted the Tenth Circuit's reasoning when it concluded that claims are "inextricably intertwined" if the district court must "scrutinize not only the challenged rule itself, but the [state court's] application of the state rule...." *Worldwide Church,* 805 F.2d at 892. This court lacks subject matter jurisdiction to review the application of a state court rule.

In *Robinson v. Ariyoshi,* 753 F.2d 1468, 1472 (9th Cir.1985), *vacated on other grounds,* 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986), the Ninth Circuit discussed the *Feldman* "inextricably intertwined" requirement thus:

> Faced with the task of deciding our power to review constitutional issues which arise from a state court proceeding, we view the *res judicata* requirement of full and fair opportunity to litigate, and the *Feldman* "inextricably intertwined" barrier as two sides of the same coin. Under the rubric of either "jurisdiction" or "res judicata," the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible appeal from the state court decision. If no consideration has been given, or any decision on the matter is ambiguous, it is unlikely that the issues presented to the state high court and to the federal court are so "inextricably intertwined" that the federal court cannot take jurisdiction.

This language was reaffirmed by the Ninth Circuit in *Worldwide Church,* 805 F.2d at 892.

In this case, we have no trouble ascertaining that the heart of SPPC's claim is their dissatisfaction with the Nevada Supreme Court's decision in *Sierra Pacific.* The goal of SPPC is to have this court review that decision. Whether framed as a complaint against the PSC, or as a backdoor attack on the Nevada Supreme Court itself, SPPC's complaint must fail. As noted, SPPC's claim against the PSC is barred by the preclusive effect of *Sierra Pacific.* Furthermore, we are not authorized to stand as an appellate court for the decisions of the Nevada Supreme Court. Although this Court would be authorized to review NRS 704.100 as promulgated, SPPC would have this court evaluate the Nevada Supreme Court's *application* of NRS 704.100 to the specific circumstances of Sierra Pacific's rate increases. Such an evaluation would require "review of a state-court judgment in a particular case." *Worldwide Church,* 805 F.2d at 892. In *Sierra Pacific,* the court concluded that "if NRS 704.100 had prevented [SPPC] from seeking its annualized operating expenses during the pendency of litigation, [SPPC's] entitlement to recover at the successful conclusion of judicial review would have been clear. To conclude otherwise would be tantamount to a taking of property without due process of law." *Sierra Pacific,* 103 Nev. at 195, 734 P.2d at 1251. However, the court concluded that NRS 704.100 *did not* prevent SPPC from requesting the expenses in question. Having decided the issue, we are without jurisdiction to make any further evaluation of that issue.

IT IS, THEREFORE, HEREBY ORDERED that the motion to dismiss filed by

defendants Scott Craigie, Jo Ann Kelly, Michael Pitlock, Stephen Wiel, Thomas Stephens, and the Public Service Commission of the State of Nevada (document # 4) is GRANTED.

The Clerk shall enter judgement accordingly.